BEECHER *v.* ALABAMA.

No. 92, Misc.   Decided October 23, 1967.

*Jack Greenberg, James M. Nabrit III* and *Michael Meltsner* for petitioner.

*MacDonald Gallion,* Attorney General of Alabama, and *Leslie Hall,* Assistant Attorney General, for respondent.

PER CURIAM.

On the morning of June 15, 1964, the petitioner, a Negro convict in a state prison, escaped from a road gang in Camp Scottsboro, Alabama.   On June 16, a woman's lifeless body was found not more than a mile from the prison camp.   The next day, the petitioner was captured in Tennessee; he was then returned to Jackson County, Alabama, where he was indicted, tried, and convicted on a charge of first degree murder.   The jury fixed his punishment at death.   After the Supreme Court of Alabama affirmed his conviction, he filed this petition for certiorari, contending that a coerced confession was used

as evidence at his trial, in violation of the Due Process Clause of the Fourteenth Amendment.[1]

The uncontradicted facts of record are these. Tennessee police officers saw the petitioner as he fled into an open field and fired a bullet into his right leg. He fell, and the local Chief of Police pressed a loaded gun to his face while another officer pointed a rifle against the side of his head. The Police Chief asked him whether he had raped and killed a white woman. When he said that he had not, the Chief called him a liar and said, "If you don't tell the truth I am going to kill you." The other officer then fired his rifle next to the petitioner's ear, and the petitioner immediately confessed.[2] Later the same day he received an injection to ease the pain in his leg. He signed something the Chief of Police described as "extradition papers" after the officers told him that "it would be best . . . to sign the papers before the gang of people came there and killed" him. He was then taken by ambulance from Tennessee to Kilby Prison in Montgomery, Alabama. By June 22, the petitioner's right leg, which was later amputated, had become so swollen and his wound so painful that he required an injection of morphine every four hours. Less than an hour after one of these injections, two Alabama investigators visited him in the prison hospital. The medical assistant in charge told the petitioner to "cooperate" and, in the petitioner's presence, he asked the investigators to inform him if the petitioner did not "tell them what they wanted to know." The medical assistant then left the petitioner alone with the State's investigators. In the course of a 90-minute "conversation," the investi-

---

[1] The petitioner also makes other Fourteenth Amendment claims. In light of our disposition of this case, we do not reach them.

[2] Although this confession was not introduced at trial, its existence is of course vitally relevant to the voluntariness of petitioner's later statements. See *United States* v. *Bayer,* 331 U. S. 532, 540–541.

gators prepared two detailed statements similar to the confession the petitioner had given five days earlier at gunpoint in Tennessee. Still in a "kind of slumber" from his last morphine injection, feverish, and in intense pain, the petitioner signed the written confessions thus prepared for him.

These confessions were admitted in evidence over the petitioner's objection.[3] Although there is some dispute as to precisely what occurred in the petitioner's room at the prison hospital,[4] we need not resolve this evidentiary

---

[3] Because part of the evidence bearing on the voluntariness of the confessions was introduced in a hearing on the petitioner's motion for new trial, the State suggests that "[h]is complaint that the confession was improperly admitted now comes too late." That suggestion is clearly untenable. The petitioner objected when the confessions were first introduced; having overruled the objection, the trial court rejected the State's claim that the issue could not be reviewed on a new trial motion; and the Supreme Court of Alabama found no state procedural bar to reaching the merits of the voluntariness claim and deciding it on the complete record. There can thus be no doubt here that the issue was raised "in [an] appropriate manner," *Brown* v. *Mississippi*, 297 U. S. 278, 286–287. In any event, since the state court deemed the federal constitutional question to be before it, we could not treat the decision below as resting upon an adequate and independent state ground even if we were to conclude that the state court might properly have relied upon such a ground to avoid deciding the federal question. *Indiana ex rel. Anderson* v. *Brand*, 303 U. S. 95, 98.

[4] The investigators claimed at trial that they had told the petitioner, during their 90-minute talk with him, that he was under no obligation to speak and that anything he said could be used against him. One of the investigators stated that he had asked the petitioner whether he wanted an attorney, and had received a negative reply. Although the prepared statements that the petitioner signed refer to no such warnings, and although the conversation in question took place on the date of this Court's decision in *Escobedo* v. *Illinois*, 378 U. S. 478, the state courts accepted the investigators' accounts of that conversation and rejected the petitioner's contrary testimony as "not at all persuasive."

conflict, for even if we accept as accurate the State's version of what transpired there, the uncontradicted facts set forth above lead to the inescapable conclusion that the petitioner's confessions were involuntary.   See *Davis v. North Carolina*, 384 U. S. 737, 741–742.

The petitioner, already wounded by the police, was ordered at gunpoint to speak his guilt or be killed.   From that time until he was directed five days later to tell Alabama investigators "what they wanted to know," there was "no break in the stream of events," *Clewis* v. *Texas*, 386 U. S. 707, 710.   For he was then still in pain, under the influence of drugs, and at the complete mercy of the prison hospital authorities.   Compare *Reck* v. *Pate*, 367 U. S. 433.

The State says that the facts in this case differ in some respects from those in previous cases where we have held confessions to be involuntary.   But constitutional inquiry into the issue of voluntariness "requires more than a mere color-matching of cases," *Reck* v. *Pate*, 367 U. S. 433, 442.   A realistic appraisal of the circumstances of *this* case compels the conclusion that this petitioner's confessions were the product of gross coercion.   Under the Due Process Clause of the Fourteenth Amendment, no conviction tainted by a confession so obtained can stand.

The motion for leave to proceed *in forma pauperis* and the petition for certiorari are granted and the judgment is reversed.

Mr. Justice Black concurs in the judgment of the Court reversing the conviction in this case but does so exclusively on the ground that the confession of the petitioner was taken from him in violation of the Self-Incrimination Clause of the Fifth Amendment to the Constitution of the United States, which Amendment was made applicable to the States by the Fourteenth Amendment.   *Malloy* v. *Hogan*, 378 U. S. 1 (1964).

MR. JUSTICE BRENNAN, whom THE CHIEF JUSTICE and MR. JUSTICE DOUGLAS join.

I concur in the judgment of reversal. This confession was taken after our decision in *Malloy* v. *Hogan,* 378 U. S. 1. Under the test of admissibility stated in *Malloy,* the facts plainly compel the Court's conclusion that the petitioner's confession was inadmissible because involuntary. We said in *Malloy,* at 7:

> ". . . the admissibility of a confession in a state criminal prosecution is tested by the same standard applied in federal prosecutions since 1897, when, in *Bram* v. *United States,* 168 U. S. 532, the Court held that '[i]n criminal trials, in the courts of the United States, wherever a question arises whether a confession is incompetent because not voluntary, the issue is controlled by that portion of the Fifth Amendment to the Constitution of the United States, commanding that no person "shall be compelled in any criminal case to be a witness against himself." ' *Id.,* at 542. Under this test, the constitutional inquiry is not whether the conduct of state officers in obtaining the confession was shocking, but whether the confession was 'free and voluntary: that is, [it] must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. . . .' *Id.,* at 542–543; see also *Hardy* v. *United States,* 186 U. S. 224, 229; *Wan* v. *United States,* 266 U. S. 1, 14; *Smith* v. *United States,* 348 U. S. 147, 150."