THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* FLORENTINO COLÓN MEJÍAS, Defendant and Appellant.

No. CR-68-42.        Decided April 14, 1970.

*E. Armstrong Watlington, Enrique Miranda Merced,* and *Julio García Antique* for appellant. *Rafael A. Rivera Cruz, Solicitor General, J. F. Rodríguez Rivera, Deputy Solicitor General,* and *Adolfo Negrón Cruz, Assistant Solicitor General,* for The People.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Appellant was accused and convicted of burglary in the first degree. His trial was held on February 1, 1966. He was sentenced to serve from four to eight years in the penitentiary. He maintains that he was prejudiced by the fact that some statements which he made to the aggrieved party while he was in the police station were admitted in evidence.

The evidence of the People relied on the testimonies of the aggrieved party, Luis E. Soto, and policeman José R. Ramírez. The former testified that on March 20, 1965, at about 7:00 a.m., two policemen came for him. He went with them to his business. He found that the front door had been forced and the lock was thrown on the floor. On the inside he found that things were disarranged and a candle blown out. At that moment he did not notice anything missing. He explained that he had closed his business the night before at about nine or ten.

After looking over the premises of the business, he went with the policemen to the police station and there they showed him a box of candies which had been seized from appellant. The police took the aggrieved party to a room in the same station where appellant was. The following appears from the record:

"Q. Luis, once you arrived at the Police Station, you say you had the opportunity of talking there with defendant?
A. Yes, sir.
Q. What did you talk about with him?

A. The first thing I asked him, I told him you had to be the one to do this, because he had told me that when he entered and lingered there for one or two hours, it was because he . . .

.     .     .     .     .     .     .     .

Q. Did you force him to accept the fact that he had broken into your business?

A. No, sir.

Q. Did he accept it willingly?

A. He willingly told me, when I told him, for a trifle of a few pennies, then he told me 'I am sorry, but such is life.' " (Tr. Ev. 15–17.)

On the cross-examination to which the aggrieved party was submitted, it came forth that while he was with defendant in the room at the police station for a period of about twenty minutes, two policemen constantly entered and left the room.

Appellant was taken to testify before the judge on the determination of the alleged incriminatory statements made to the aggrieved party. To questions by the defense, he testified that when he was taken to the police station on March 20, he was beaten and that before the prejudiced party arrived he had already given a statement to the police. (Tr. Ev. 32–33.) He admitted that on the following July 7, he signed a sworn statement before the prosecutors and he explained that "I accepted it because that same statement was in the police station, I had given that to him." This written statement was not presented in evidence.

After hearing the evidence the trial judge concluded that the admission made by defendant to the aggrieved party was voluntary and therefore admissible in evidence. He stated:

"Judge: . . . The court does not give credit to the aggrieved party's testimony in the sense of what he testified, but in what it says here about the voluntariness. . . . The only thing I accept here is the statement of defendant to this gentleman, Luis E. Soto, who is a private person, that that does not comprise the official investigation in these cases. The court understands that the requirement adduced by the defense does not operate, he is

a private person, in order that he does not testify, neither do the warnings in the sense that he is entitled to have assistance of counsel since it was not an official investigation, but a conversation with a private person. . . ." (Tr. Ev. 43–44.)

By the date the trial was held, on February 1, 1966, the rules established in *Rivera Escuté* v. *Delgado, Warden*, 92 P.R.R. 746 (1965), were available to defendant; there at page 760 we stated: "Under the circumstances recited above, namely, when the investigation shifts to accusatory and is focused on a particular suspect for the purpose of eliciting a confession, *Escobedo* indicates that the adversary system begins to operate. Having shifted to adversary, it is the duty of the police or other competent authority to warn him of his constitutional right to remain silent and not to incriminate himself and of his constitutional right to have then and there assistance of counsel and to be permitted to have it."

We cannot evade the set of facts of this case, and analyze it abstractly as if they were mere admissions made by appellant to a private person and support their admission in evidence on the basis that the doctrine of *Rivera Escuté* ceases to support a defendant if the confession is made to a private person and not to a state officer. The police arrested appellant near Soto's business, the door of which the police found had been forced. They found him crouched with a box of candies in his hands. They took him to the police station at about 3:00 a.m. and there they confined him to a room until eight o'clock in the morning, time when the aggrieved party arrived to identify the stolen objects. During those five hours when he was detained at the police station, defendant was examined by the police without being warned of his constitutional rights. As we saw before, appellant accepted having confessed at the police station in the presence of policemen Martínez and Zapata, before the aggrieved party was taken to the police station. To questions of the prosecuting attorney, appellant testified that, after his confession to the

two officers he was taken to the prosecuting attorney's office. On another occasion when he was taken to the prosecuting attorney's office he signed the confession. However, this signed confession was not presented in evidence. The record does not show that the warnings required by *Rivera Escuté* were made to defendant before said confession was taken.

■ The controversy in this case cannot be restricted to determine whether or not the rule of *Rivera Escuté* v. *Delgado, Warden, supra,* is applicable to confessions made to private persons. Appellant had been in a critical stage of his prosecution under the custody and influence of the police. He was not warned in any manner whatsoever in regard to his constitutional rights. He gave a statement to the police, and it was not presented in evidence. The aggrieved party was taken to the police station to identify the stolen goods. He was taken to the room where defendant was. For twenty minutes he talked with defendant, and allegedly the latter admitted the facts. This admission was indeed presented in evidence. The State cannot bar the rule of *Rivera Escuté* using or introducing a private person in defendant's examination.

■ The defendant having already confessed, without receiving beforehand the warnings required by the due process, the statements made to the aggrieved party in the police station suffer from the same constitutional defect which would render the first confession inadmissible. We cannot disregard the presence of the police and the fact that appellant was at the police station. The second is necessarily a consequence of the first. What difference would the fact of admitting them before the aggrieved party make to defendant, a confession having been already made to the police? The cat was already out of the bag.[1] And since before he

---

[1] Mr. Justice Jackson in the case of *United States* v. *Bayer,* 331 U.S. 532, 540 (1947), used this metaphor which has been generally accepted in the American jurisdiction to explain this situation. It was thus stated:

made the first confession he was not warned of his right to remain silent and to be assisted by counsel, the second one partakes of the same defects as the first. Using the classical expression of the American case law: it is the fruit of the poisonous tree, originally applied to cases of search and subsequently extended to cases of confessions. *Developments—Confessions*, 79 Harv. L. Rev. 935, 1024 (1966). The alleged incriminatory admission is nothing else than the extension of the statement which defendant began to give to the police, resulting from an interrogatory started by the police when he was arrested and taken to the police station. We cannot sharply split both examinations, applying some rules to one and not to the other when both are part of the whole prosecution started by the police against defendant within the police station. To seek to use one and not the other would be to open a gap to the rules of *Rivera Escuté* which would practically nullify them. It would be very easy for the authorities to overlook these rules introducing at any stage of the investigation a private person, and to seek to obtain an incriminating confession or admission free from the constitutional requirements prior to its obtention. *Cf. People* v. *Laguna Rodríguez*, 92 P.R.R. 811 (1965).

The Solicitor General accepts that appellant's alleged admission occurred at a critical stage of the investigation when

"Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first."

In *Bayer* the second confession was admitted evidently for the reason that it was made six months after the first. But see *Beecher* v. *Alabama,* 389 U.S. 35, 36, and footnote 2 (1967), and *Harrison* v. *United States,* 392 U.S. 219 (1968). Mr. Justice Harlan concurring in part and dissenting in part in the case of *Darwin* v. *Connecticut,* 391 U.S. 346, 350 (1968), stated: "A principal reason why a suspect might make a second or third confession is simply that, having already confessed once or twice, he might think he has little to lose by repetition."

appellant was already considered a suspect, but that the same does not appear from the intervention of a peace officer nor from a representative of the prosecuting attorney but from a private person, the prejudiced party. He alleges that the statements made by the aggrieved party and appellant's answer arise spontaneously. In support of his contention he cites the position assumed by several federal and state courts as to the fact that the doctrines in the cases of *Escobedo* v. *Illinois*, 378 U.S. 478 (1964) and *Miranda* v. *Arizona*, 384 U.S. 436 (1966), apply only to interrogatories carried out by peace officers when the deponent is under police custody.

In the cases cited by the Solicitor, *State* v. *O'Kelly*, 150 N.W.2d 117 (1967); *Schaumberg* v. *State*, 432 P.2d 500 (1967); *People* v. *Frank*, 275 N.Y.S.2d 570 (1966); *People* v. *Santiago*, 278 N.Y.S.2d 260 (1967), the defendant was not under arrest in the police station, nor had the police started or conducted an examination. In all these cases the defendants gave their statements or confessions prior to any intervention on the part of the police. In the case at bar defendant had been questioned by the police during five hours before the alleged admission to the aggrieved party, and he had given a statement to the police, without there appearing from the record that any warning had been given him in regard to his constitutional rights.

The other two cases cited, *Evans* v. *United States*, 377 F.2d 535 (5th Cir. 1967) and *Yates* v. *United States*, 384 F.2d 586 (5th Cir. 1967), are not applicable either. In the first case the required warnings were made before defendant's interrogatory began, and in the second, the statements in dispute were uttered while defendant with a revolver on his belt, impersonating an Army officer, spoke with two unarmed employees of the hotel before the intervention and arrival on the scene of the F.B.I. agents.

In view of the foregoing the judgment appealed from will be reversed, and the case will be remanded for a new trial.

Mr. Chief Justice Negrón Fernández did not participate herein.