**UNITED STATES of America ex rel. Anthony RUSSO, Appellant,**

**v.**

**The STATE OF NEW JERSEY and the Principal Keeper of the State Prison at Trenton, New Jersey.**

**UNITED STATES of America ex rel. Frank BISIGNANO, Appellant,**

**v.**

**The STATE OF NEW JERSEY and the Principal Keeper of the State Prison at Trenton, New Jersey.**

**Nos. 18410, 18498.**

United States Court of Appeals, Third Circuit.

Argued Jan. 5, 1971.

Decided March 12, 1971.

Irving I. Vogelman, Jersey City, N. J., argued for appellant Russo in No. 18,-

410 (Raymond A. Brown, Jersey City, N. J., on the brief).

Richard F. Plechner, Metuchen, N. J., argued for appellant Bisignano in No. 18,498.

George N. Pappas, Asst. Prosecutor, Newark, N. J., for appellee (Joseph P. Lordi, Essex County Prosecutor, Newark, N. J., on the brief).

Before GANEY and ADAMS, Circuit Judges, and WEIS, District Judge.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

In 1961 Anthony Russo and Frank Bisignano were found guilty of murder in the first degree and were sentenced to death by a New Jersey State Court. Russo and Bisignano petitioned for writs of habeas corpus in the District Court of the District of New Jersey. The District Court denied the petitions and subsequently a panel of this Court reviewed the judgments of the District Court. United States ex rel. Russo v. New Jersey, 351 F.2d 429 (1965). Applying retroactively the principles of Escobedo v. Illinois, 378 U.S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977 (1964) to the circumstances surrounding confessions made by Russo and Bisignano, this Court decided there had been constitutional error when confessions attributed to them were admitted into evidence at their murder trial.[1] Consequently, we ordered the District Court to issue the writs of habeas corpus which petitioners sought. Thereafter, the Supreme Court granted certiorari, and in a per curiam opinion vacated the judgments and remanded the cases to the District Court for the District of New Jersey for further proceedings "in light of Johnson v. New Jersey, 384 U.S. 719, [86 S.Ct. 1772, 16 L.Ed.2d 882] (1966)." New

Jersey v. Russo, 384 U.S. 889, 86 S.Ct. 1914, 16 L.Ed.2d 995 (1966).

Johnson v. New Jersey, supra, held that Escobedo v. Illinois, as well as Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) were not to be applied retroactively.[2] However, Johnson re-affirmed the principle that defendants—even those whose trials were held prior to the dates the Supreme Court decided Miranda and Escobedo—would, nevertheless, be able to attack the introduction of any confession they may have made by invoking a "substantive test of voluntariness." Such test includes inter alia a consideration whether the defendant had been advised of his constitutional rights as set forth in Miranda and whether he had had access to counsel. 384 U.S. at 730, 86 S.Ct. 1772.

Pursuant to the mandate of the Supreme Court, Chief Judge Augelli of the District Court of New Jersey reconsidered whether the confessions used as evidence against Russo and Bisignano had been made voluntarily within the meaning of Johnson v. New Jersey, supra. He decided, after careful review of a voluminous record, that the confessions in question were voluntarily made even though the petitioners had neither been informed of their constitutional rights nor had consulted with counsel.

The record reveals the following facts pertinent to this appeal. At approximately eleven o'clock p. m. on March 15, 1961, Russo and Bisignano entered a Newark tavern in an attempt to commit robbery. Russo was armed with an automatic pistol and Bisignano with a knife. An off-duty policeman, Joseph Hagel, a patron of the tavern, drew his gun in order to prevent the crime. An exchange of shots occurred between Rus-

---

1. The issue of retroactivity was not raised by the litigants until the filing of a petition for rehearing. The petition was denied by the active judges of this circuit, with Judge McLaughlin dissenting, 331 F.2d at 440.

2. The Supreme Court's opinion in Miranda was announced on June 13, 1966, during the interval between our decision in United States ex rel. Russo v. New Jersey, supra, and the Supreme Court's grant of certiorari in Russo.

so and Hagel. Hagel was wounded fatally and Russo was seriously injured when a bullet fired by Hagel lodged in his right arm. Russo and Bisignano fled on foot with a third conspirator, La Pierre, who had remained outside the tavern in a stolen car. Shortly after the attempted robbery had been thwarted by Hagel, Russo and La Pierre were apprehended by the Newark police a few blocks from the scene of the crime. Russo and La Pierre were immediately taken back to the tavern to be viewed for identification by four patrons who had witnessed the attempted robbery. Because of the bullet wound in his arm, Russo was not taken to a police station, as was La Pierre, but instead was brought to a hospital for treatment at approximately twelve thirty a. m., March 16th. After receiving emergency aid, Russo was questioned for a short time, at most no more than half an hour, by four detectives. During this period Russo steadfastly denied his guilt. On March 17th Russo permitted an operation, which he had previously refused to allow, to remove the bullet lodged in his arm. After the operation, Russo admitted his participation in the attempted robbery. On March 24th Russo was released from the hospital in police custody, and on that day he signed a written statement acknowledging his guilt.

Russo, but not Bisignano, contends that under the conditions surrounding his interrogation, it was error for the District Court to decide that the confession was voluntary. We are troubled by the circumstances which culminated in Russo's confession. They include the following events. Russo was under continuous police guard from the time of his capture, even while undergoing the operation to remove the bullet from his arm. Although, apparently, he was not questioned by the police from the afternoon of March 17th, the day he first admitted participation in the robbery, until March 24th, when he made a

full confession at a police station, Russo was questioned sporadically on March 16th and on the morning of March 17th. During these two days, it appears that Russo was in great pain from his wound, and it is undisputed that Russo was chained to his bed while he was in the hospital. Nevertheless the police officers who testified all agreed that Russo had in no way been physically abused and their testimony was credited by the trier of fact in the New Jersey Court.[3]

■ A reasonable determination of credibility made by the initial trier of fact must be given great deference. Consequently we accept, as did the District Court, the resolution of controverted fact made by the New Jersey State Court that the police were relating the truth when they denied that Russo had been repeatedly punched in the face, stomach, and on his wounded arm. Haynes v. Washington, 373 U.S. 503, 515–516, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Culombe v. Connecticut, 367 U.S. 568, 603–604, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); Brown v. Allen, 344 U.S. 433, 458, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Watts v. Indiana, 338 U.S. 49, 51–52, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949); United States ex rel. Russo v. New Jersey, 351 F.2d 429, 433 (3rd Cir. 1965); cf. United States ex rel. Manley v. Rundle, 404 F.2d 44, 46 (3rd Cir. 1969), cert. denied, 395 U.S. 914, 89 S.Ct. 1760, 23 L.Ed.2d 227 (1969).

■ However, a finding that Russo's confession was not *physically* compelled does not entirely dispose of the issue, because we are urged to find that the undisputed events preceding the confession—the length of Russo's detention coupled with his below-average intelligence, the emotional consequences of his bullet wound and resulting operation—reveal that the confession was the product of *mental* coercion. In his brief Russo refers to a line of cases which found confessions to have been coerced

3. As this point it should be noted that Russo and Bisignano agreed that there is no need for a factual hearing, and submitted their petitions on the original record.

and thus their admission into evidence a violation of due process. Beecher v. Alabama, 389 U.S. 35, 88 S.Ct. 189, 19 L. Ed.2d 35 (1967); Clews v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1966); Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966).[4] Russo contends that the circumstances surrounding his confession are sufficiently similar to the facts of these coercion cases so as to demonstrate his admission was involuntary—the product of an overborne mind. However, a careful examination of these cases demonstrates that the events culminating in the confessions there considered were far more egregious than the conditions which accompanied Russo's admission of guilt. In *Beecher*, at the time of his capture by the police, the defendant had been wounded in the leg, and while lying in an open field one policeman held a loaded gun to the defendant's face, while another officer fired a rifle next to Beecher's ear. Five days later, after threats of lynching had been made, his leg amputated, having been given morphine, and numerous threats having been made by a medical attendant, Beecher signed a written confession. In *Clews* the defendant was interrogated for thirty-eight hours, was permitted only short periods of sleep, and given little food. After having been questioned, Clews made a confession which was inconsistent with the facts as they later were developed. Following the initial confession, Clews was questioned by numerous officers for a period of almost eight days during which time he was given several polygraph tests, was driven on a six hundred mile round trip to the victim's grave, and was continuously in police custody, having "little or no contact with anyone other than police." In *Davis* the defendant was interrogated for sixteen days, during which period he was fed only two sandwiches a day, and lost 15 pounds during his detention.

We do not believe that the facts of these three cases are comparable to those here. The record reveals that Russo was not extensively questioned by the police at any time prior to his confession, was not physically beaten, and was not threatened with harm.[5]

Russo received adequate medical care and was visited by at least one sympathetic nurse. There is no indication that Russo was denied adequate food. Under these conditions, we agree with the District Court's determination that Russo's confession was not the product of an overborne mind, even though he had not been apprised of his rights, nor advised by counsel. As indicated by Judge Biggs, writing for a unanimous panel in 1965 which considered Russo's claim of involuntariness, a likely motive for Russo's confession was the fact that Russo was aware that the police had possession of the bullet which had been surgically removed from his arm and since the bullet had been fired from the slain officer's gun, Russo might well have believed it was futile to continue to deny his guilt. United States ex rel. Russo v. New Jersey, *supra*, 351 F.2d at 434.

On remand the District Court allowed counsel for Russo and Bisignano to argue that it was error for the New Jersey trial court to hear in the presence of the jury testimony relating to the volun-

4. Russo also refers to, but does not stress Greenwald v. Wisconsin, 390 U.S. 519, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968); Brooks v. Florida, 389 U.S. 413, 88 S.Ct. 541, 19 L.Ed.2d 643 (1967); Sims v. Georgia, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967). Having compared the events of these cases to the total circumstances here present, we do not believe they require a different result than the one we have reached.

5. Russo does allege beatings and threats of physical attack by the police, but as indicated earlier, the trier of fact has resolved the evidentiary conflict in favor of police testimony to the effect that none of Russo's allegations in this regard was true.

tariness of the confessions made by Russo and Bisignano. The District Court decided that in view of Pinto v. Pierce, 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 (1967) the standards set forth in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), regarding a judicial determination of the admissibility of confessions, had not been violated. Both Russo and Bisignano urge that the decision in Pinto v. Pierce, *supra*, is inapplicable to the present case, because in *Pinto* counsel had consented to the holding of a voluntariness hearing in the jury's presence, while in contrast attorneys for Russo and Bisignano vigorously objected to such procedure.

■ We think, however, that the trial court did not commit reversible error when in the presence of the jury it held an inquiry into the admissibility of the confessions. The hearing occurred prior to Jackson v. Denno, *supra*, and consequently the doctrine of Stein v. New York, 346 U.S. 156, 73 S.Ct. 1077, 97 L. Ed. 1522 (1953) at the time of the New Jersey trial articulated the Supreme Court's view of the requirements of due process in this area. Although .*Stein* was overruled by the *Jackson* decision, *Jackson* itself recommends but does not require that "in cases to be tried hereafter a proper determination of voluntariness be made *prior* to the admission of the confession to the jury which is adjudicating guilt or innocence." (emphasis supplied). 378 U.S. at 395, 84 S.Ct. at 1791. As the Court pointed out in *Pinto*, it is "prudent to hold a voluntariness hearing outside the presence of the jury," otherwise there is a risk that the trial will be aborted if at the end of the hearing the confession is found by the judge to be inadmissible. Pinto v. Pierce, *supra*, 389 U.S. at 32, 88 S.Ct. 192; United States ex rel. Bennett v. Rundle, 419 F.2d 599, 606 (3rd Cir. 1969) (en banc). The mandate of *Jackson* is that the judge presiding at the trial must determine for himself that the confession is admissible. Once the judge has so determined, even if the hearing is held in the presence of the

jury, as occurred here, the requirement of *Jackson* is satisfied. Pinto v. Pierce, *supra*; United States ex rel. Bennett v. Rundle, *supra*, 419 F.2d at 606; see Sigler v. Parker, 396 U.S. 482, 90 S.Ct. 667, 24 L.Ed.2d 672 (1970); Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967); the Supreme Court, 1963 Term, 78 Harv.L. Rev. 143, 211–213 (1964).

■ Further, Bisignano argues that in any event there was error when the trial court did not clearly state for the record that it had determined the confessions to have been made voluntarily before permitting the jury to decide for itself whether the confessions were uncoerced. Bisignano contends that the rule of Sims v. Georgia, supra —the trial judge's "conclusion that the confession is voluntary must appear from the record with unmistakable clarity"—was violated in the present case. However, any ambiguity that may have existed as to the underlying reason for the trial court's decision to admit the confession was dispelled when the New Jersey Supreme Court remanded this case to the trial judge so that he might certify whether he had determined for himself whether the confessions were voluntary, and if so, what his decision had been. Approximately one year after having admitted into evidence the confessions of Russo and Bisignano, the trial judge certified to the Supreme Court that he had found the confessions to have been made voluntarily before receiving them into evidence. In addition the trial court made explicit findings of fact upon which it had based its legal conclusion. New Jersey v. La Pierre, Bisignano, and Russo, 39 N.J. 156, 188 A.2d 10, 14 (1963). Although the trial transcript may have been ambiguous, the record is now clear as to the trial judge's decision regarding admissibility, and hence the requirement of *Sims* is satisfied.

■ In order to prevent the execution of the death sentences imposed on them, Russo and Bisignano urge this Court to

apply the doctrine of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). We have carefully read the record and note several instances in which jurors were excused for cause on the ground that they opposed the imposition of the death penalty. Such a procedure would seem to run afoul of the *Witherspoon* doctrine. However, we do not at this time decide the issue because we agree with the District Court that the appellants have not exhausted their state remedies in this regard as required by 28 U.S.C.A. § 2254. Since the New Jersey courts have never been afforded the opportunity to apply *Witherspoon* to the facts of this case, we are disinclined to grant relief on this point to the petitioner at this time. Brown v. Allen, *supra*, 344 U.S. at 487, 73 S.Ct. 397 (1953); United States ex rel. Howard v. Russell, 405 F.2d 169, 171 (3rd Cir. 1969); United States ex rel. Fletcher v. Maroney, 413 F.2d 16 (3rd Cir. 1969); *compare* United States ex rel. Gockley v. Myers, 411 F.2d 216 (en banc) (3rd Cir. 1969). In arguing that they should not be required to exhaust state remedies, the petitioners suggest that Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969), conflicts with the District Court's decision that it lacked the power to decide the *Witherspoon* issue because state remedies had not been exhausted. However, in *Boulden* the Supreme Court remanded the case to the District Court to consider *inter alia* whether the petitioners had exhausted their state remedies, 394 U.S. at 484, 89 S.Ct. 1138, and hence *Boulden* did not reach, nor alter, the doctrine of exhaustion of remedies.

Finally, Russo urges this Court to apply United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) to certain New Jersey statutes, 2A N.J.S.A. §§ 113–3, 113–4, under which he was sentenced and to declare that such statutes violate the Fifth and Sixth Amendments. This contention is raised for the first time on appeal, and we think the appropriate practice is to remand the case to the District Court to determine if state remedies have been exhausted in this aspect, and to develop the record on the point prior to deciding such a delicate and difficult issue. Brown v. New Jersey, 395 F.2d 917 (3rd Cir. 1968); United States ex rel. Long v. Rundle, 327 F.2d 495, cert. denied 377 U.S. 957, 84 S.Ct. 1638, 12 L.Ed.2d 501 (1964); Petition of Thompson, 301 F.2d 659, 661 (3rd Cir. 1962).

Accordingly, the judgment of the District Court will be affirmed and the case remanded in a manner consistent with this opinion.