THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN CZAJA, Defendant-Appellant.

First District (2nd Division)    No. 80-469

Opinion filed June 23, 1981.

James J. Doherty, Public Defender, of Chicago (Timothy K. McMorrow, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Adrienne Noble Nacev, and George M. Velcich, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant John Czaja was charged by indictment with delivery of controlled substances on February 9, 1978. He moved to suppress oral statements made after his arrest. A hearing was held thereon, at which he claimed his statements were involuntary. The motion court granted his motion as to a statement he made at the home of his grandmother where he was arrested, but not as to statements he made at the police station. Defendant was subsequently convicted in a jury trial, and was sentenced

to 6 years imprisonment. He raises as the issue on appeal whether the court erred in allowing the State to introduce his post-arrest statements into evidence at trial.

At the hearing to suppress the statements, Agent Charles J. Doerr of the Illinois Department of Law Enforcement (I.D.L.E.) testified that he walked into the house where defendant was found and saw two agents attempting to arrest him. Defendant was "strongly resisting the police officers" but no one struck him. Agent Doerr transported defendant to the Sixth District Police Station in Chicago and questioned him for from 20 to 30 minutes. He read *Miranda* warnings to defendant and the latter signed the waiver of rights form presented to him. Defendant was provided with something to drink; he was not threatened or given any promises; he was not handcuffed; and, he did not complain about having been beaten.

Agent David McDivitt of the I.D.L.E. testified that when he and another officer first entered the home and announced the arrest, defendant attempted to evade them by leaving the house. When the officers sought to handcuff defendant, he began to flail his arms and legs violently, but stopped struggling after the officers handcuffed him. McDivitt grabbed defendant by the collar, but did not recall if he ever struck him with a closed fist in attempting to subdue him. He recalled seeing an elderly woman at the house who identified herself as defendant's grandmother. McDivitt testified that he was present in the Sixth District interview room with Doerr and defendant after the arrest, heard Doerr advise defendant of his *Miranda* rights, and then saw defendant read and sign the waiver form. McDivitt stated further that neither he nor any other officers coerced defendant into answering police questions. He saw no cuts or bruises on defendant, but defendant did ask him to look at his head to see if there was a bump.

Chicago police officer James Turney also participated in the arrest and testified. He recovered a sum of money from defendant. When he said to another of the arresting officers, "There's only $3,100 here," defendant said, "The other $1,400 is in my right front pocket." There was nothing unusual about defendant's appearance, although he did see "blood on his hair or something," but that there was no "heavy bleeding." Officer Turney stated that he did not strike defendant during the struggle and that he did not see any other officer strike defendant.

Defendant testified that he was at his grandmother's house on February 9, 1978. At 9:35 p.m., he answered a knock at the door and several people entered and tackled him, knocked him down and started beating, kicking and punching him. They continued the beating and kicking as he was on the ground and when he stood up. As a result, he sustained injuries to his ribs, nose, mouth and back of his head. He was taken to a police station and placed in a room with two officers and

handcuffed. They told him that if he didn't give them information, they would give him more of what he had experienced earlier. He said he was never advised of his *Miranda* rights, although he did sign a document that was covered by another piece of paper, and he was told to "sign it or you're going to get more of what you had." He was not allowed to make a telephone call, and he was told things would be easier for him if he gave the officers information they sought. He was told to wash the blood off his face before he was photographed. He was struck 30 or 40 times, was examined by a doctor, and was released without hospitalization.

Elizabeth Sisk, defendant's grandmother, testified that on the night in question she was in her bedroom when she heard a loud commotion coming from the living room of her house. She left her room by a side door, went outside and around to another entrance, where she saw a man who told her that she would be placed under arrest if she tried to enter. She went into the house and saw her grandson with his hands handcuffed behind his back being punched and hit by four men. He was bleeding from the nose, mouth and head.

Audrey Czaja, defendant's mother, testified that she received a call advising her that her son was being arrested and taken to police headquarters at 11th and State Street. She got to the house just as defendant was being removed. She proceeded to the police station at 11th and State, and after a while was told that he had been taken to another station. It was not until 5 a.m. that she saw defendant. At that time she noticed that the side of his face was swollen, his nose was crusted with blood, his eyes were blackened and his lips were bleeding.

The parties stipulated that Dr. Jerome E. Green examined defendant on February 10, 1978, and that he made objective findings demonstrating that defendant sustained a number of injuries.

The motion court sustained the motion to suppress as to the statement made in the home at the time of arrest. The court found that defendant resisted arrest, but stated that the police officers appeared to be covering up something on the aspect of injuries that put the court in the dilemma of having to decide whether the injuries occurred as a result of defendant's resisting arrest or as a result of his having been physically abused in order to get him to make a statement. The court deferred its ruling on the admissibility of defendant's statements at the police station, noting that there was a time element between whatever violation took place between the police and the defendant at home and the point at which he was given the *Miranda* warnings at the police station. On September 24, 1979, the court denied suppression of statements taken at the police station, finding it incredible that defendant would just sign some statement that was covered over by some other paper and did not know what he was signing. The court found that defendant was properly admonished, and any

duress that he was subjected to at his grandmother's house did not carry over to the time he was at the station.

At trial, the State presented several witnesses to show that undercover agent Chris Kolman purchased 3,000 Tuinal pills, a controlled substance, from defendant for $4,500. Evidence was also presented concerning a sale of drugs by defendant the previous September. Defendant submitted the defense of entrapment. Agent Doerr again testified that he informed defendant of his *Miranda* rights and that defendant read and signed the preprinted waiver form before answering questions.

Defendant's statement to Agent Doerr at the police station was also admitted into evidence. Doerr testified that defendant told him he received the barbiturates from Ed Oehme, who was "his source of supply for large quantities of barbiturates." Defendant told him that Oehme got his drugs from two people who had a condominium in Jamaica. When Doerr asked defendant if he were acquainted with other drug dealers in the area, defendant gave him the names of three people who were large cocaine suppliers in southern Cook County.

The jury found defendant guilty of delivery of controlled substances, and sentence was imposed as previously noted.

Defendant argues that since the statement he made in his grandmother's home was found to be involuntary, the statements made at the police station should also have been found involuntary because they were part of the continuing stream of events which originated in the home. He claims that a defendant's conviction cannot be founded in any way upon such an involuntary statement, citing *Mincey v. Arizona* (1978), 437 U.S. 385, 57 L. Ed. 2d 290, 98 S. Ct. 2408, which so holds. Defendant urges that inasmuch as the subject statements were taken only 45 minutes after defendant had been beaten, and because he was threatened with more beatings, the statements were taken under duress, and not given voluntarily. Defendant also relies upon *Beecher v. Alabama* (1967), 389 U.S. 35, 19 L. Ed. 2d 35, 88 S. Ct. 189, wherein the Supreme Court found that a confession used for a murder conviction was involuntary. An oral confession was obtained after the defendant had been injured, when the police held a gun to his head and told him they would kill him if he did not talk. The written confession was not obtained until five days after the arrest and threat. Noting that there was "no break in the stream of events" (389 U.S. 35, 38, 19 L. Ed. 2d 35, 39, 88 S. Ct. 189, 191), the court reversed the conviction. Defendant claims that at bar, as in *Beecher*, there was no break in the stream of events when defendant gave his second statement.

■■ The State responds, first, that defendant waived review of the motion court's denial of his motion to suppress by failing to include that issue in his written motion for a new trial, citing *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856. To the same effect are *People v. Precup* (1978),

73 Ill. 2d 7, 16, 382 N.E.2d 227; and section 116—1(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 116—1(c)). In its discretion, this court has nevertheless considered such constitutional issues on their merits. (See *People v. Baker* (1979), 78 Ill. App. 3d 411, 396 N.E.2d 1174; *People v. Smith* (1977), 53 Ill. App. 3d 395, 368 N.E.2d 561; *People v. Gray* (1977), 47 Ill. App. 3d 1026, 365 N.E.2d 501.) We do so in this case.

The State urges defendant's failure to demonstrate that the motion court's finding of voluntariness was unsupported by the evidence adduced at the hearing, and points out that it need only establish voluntariness by a preponderance of the evidence, citing *People v. Tolbert* (1980), 81 Ill. App. 3d 977, 984, 401 N.E.2d 1004. The State also relies upon the testimony of the agents that: defendant was not struck; he was given his *Miranda* rights and understood them; and he was not abused at the police station where he made the subject statements. The State emphasizes that the issue here is one of credibility for the motion judge. Significantly, the evidence demonstrates that although the arresting officers saw no one strike defendant, and were unable to discern any injuries he may have sustained aside from a small cut on the back of his head, three witnesses, defendant, his mother and grandmother, were quite certain that defendant had been punched, kicked and beaten about his body. A physician, who examined defendant on the following day, testified that defendant indeed sustained injuries, based upon his objective findings, including: an abrasion of the left occipital area; an abrasion with swelling over the left zygoma; an abrasion to the inner aspect of the right lower lip; an abrasion to the lower lip central and below the right naris; an abrasion with swelling behind the right ear; tenderness to the chest wall myositis, left lower chest wall; abrasion to the right wrist; a tenderness over the left occipital area and other lacerations; and tenderness to the right knee, an area that had previously had surgery. The defense testimony on this point is supported by the photographs taken of defendant at the police station. The report of proceedings, reviewed in its entirety, reveals that the motion judge perceived the application by police of more force than necessary to subdue defendant in effecting an arrest, and his remarks concerning a police cover-up reflect the tenor of that evidence.

■■ ■ The principal reason given by the motion court in finding the confession at the police station as having been voluntarily given was that defendant signed the waiver of rights form after reportedly being advised of his *Miranda* rights and that he appeared to be too intelligent to have signed the bottom of the form while the top of the form was being covered over by a blank sheet of paper, as defendant claimed. In determining whether a confession was voluntarily given, we may not

depend upon any one aspect or factor, but we must consider the " 'totality of all the relevant circumstances.' " (*People v. Prude* (1977), 66 Ill. 2d 470, 475, 363 N.E.2d 371, *cert. denied* (1977), 434 U.S. 930, 54 L. Ed 2d 291, 98 S. Ct. 419; *People v. Tolbert*, 81 Ill. App. 3d 977, 984.) Whether the form was partially covered, or not, is of little aid in considering the totality of circumstances surrounding its signing and the answers thereafter given in the putative oral confession in light of the physical injuries sustained by defendant a short time earlier and the asserted threats that he would either sign or otherwise receive more of the physical abuse he had just sustained at home. Under this evidence, the finding by the motion court of voluntariness of the police station confession is against the manifest weight of the evidence and must be reversed. (See *People v. Medina* (1978), 71 Ill. 2d 254, 258, 375 N.E.2d 78; *People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601; *People v. Tolbert*, 81 Ill. App. 3d 977, 984-85.) The interrogation conducted at the police station 45 minutes after the beating defendant received at his grandmother's house, administered by some of the same policemen who were now asking the questions and, according to defendant, were threatening to give him more of the same, must be deemed part of the continuing stream of events which rendered the oral confession involuntary (*Beecher v. Alabama*), and the conviction which rested in part upon that confession must be reversed and the cause remanded for a new trial. *Mincey v. Arizona.*

The State relies upon testimony of Agent Doerr, adduced at trial, that defendant refused to put his statement into writing, suggesting that defendant's refusal shows that he perceived the significance of the procedure. The State further cites *People v. Lewis* (1979), 75 Ill. App. 3d 259, 393 N.E.2d 1098, which holds that a defendant's refusal to give a written statement demonstrates that he is aware of his rights. The issue in the instant case is not only whether defendant was aware of his rights, however; it is whether he was coerced or intimidated into relinquishing them.

Finally, the State relies upon *People v. Alvarez* (1981), 93 Ill. App. 3d 111, 416 N.E.2d 1217, in support of its position. There defendant claimed that police officers had beaten him and coerced certain statements thereby. He introduced into evidence photographs showing his injuries sustained as a result of the purported beatings. The appellate court affirmed the trial court's finding that defendant's statement was voluntary, noting that the only evidence in support of defendant's version were the photographs; here, there were two other witnesses who testified in support of defendant's claim. Further, in *Alvarez*, a physician testified that the injuries sustained by that defendant were not consistent with his claim of having been beaten by a club, unlike the injuries detailed by a

doctor's stipulated objective findings in the instant case, which appear to be clearly connected with the beatings described by the defense witnesses.

For the foregoing reasons, defendant's conviction must be reversed and the cause remanded for a new trial.

Reversed and remanded.

DOWNING and PERLIN, JJ., concur.