[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10963
Non-Argument Calendar
_____

D.C. Docket No. 6:13-cv-00788-ACC-DAB

TONY CORDERA,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 28, 2016)

Before ED CARNES, Chief Judge, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Tony Cordera, a Florida prisoner serving a life sentence, appeals the district court's denial of his habeas corpus petition. We granted a certificate of appealability on the following issue: whether the state court erred in denying Cordera's motion to suppress un-<u>Mirandized</u> statements made to the police while he was hospitalized.

Cordera was taken to the hospital after the police found him in his bedroom lying next to a dead woman. He was holding a knife, his body was bloody, and he was not moving. An officer rode with him in the ambulance to the hospital, where an emergency room doctor treated him for extensive self-inflicted lacerations on both wrists. Cordera was responding to commands and did not appear to be in shock. Tests were negative for ingestion of alcohol or medication. The only medication he received was a tetanus shot (which would not have affected his mental abilities).

Two detectives interviewed Cordera in the emergency room that day. Although he appeared to be unconscious before the interview, he became alert when a nurse placed smelling salts under his nose. He was not given <u>Miranda</u>[1] warnings. One of the detectives told Cordera that he was a homicide detective and that they were trying to figure out what happened to his wrists (they also told him that they had a search warrant for his home). They began asking him about his

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436, 444–45, 86 S. Ct. 1602, 1612 (1966).

2

relationship with the victim and what had happened at his home that morning. Cordera was alert and able to answer their questions, but repeatedly maintained that he could not remember anything that happened after the victim arrived at his home that morning. He was never handcuffed or placed under arrest during the interview, which was recorded and lasted about 41 minutes.

Cordera was arrested several hours after the interview. He was indicted for first degree murder with a weapon, in violation of Fla. Stat. §§ 782.04(1) and 775.087(1). He moved to suppress the statements he made at the hospital, contending that he was entitled to Miranda warnings because he was in custody and that his statements were involuntary. The state circuit court denied his motion.

A jury found Cordera guilty and he was sentenced to life in prison without the possibility of parole. He appealed his conviction and the Florida Fifth District Court of Appeal affirmed without opinion (and denied his motion for rehearing and a written opinion). He then filed a petition for habeas corpus under 28 U.S.C. § 2254 in federal district court, contending that the state court erred in denying his motion to suppress. The district court denied his petition.

We review de novo a district court's denial of a habeas petition, and its factual findings for clear error. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010). 28 U.S.C. § 2254(d) prohibits federal courts from granting habeas relief on claims previously adjudicated on the merits in state court, unless the state court

3

decision: (1) "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

"Clearly established federal law" refers "to the holdings . . . of the Supreme Court's decisions as of the time of the relevant state-court decision." Ward, 592 F.3d at 1155 (alteration in original) (quotation marks omitted). For a state court decision to be contrary to clearly established federal law, it "must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." Id. (quotation marks omitted). A state court decision is an "unreasonable application" of clearly established federal law where the court "unreasonably extends or fails to extend a clearly established legal principle to a new context." Id. (quotation marks omitted). A state court makes an unreasonable determination of the facts only where the petitioner rebuts "the presumption of correctness of a state court's factual findings by clear and convincing evidence." Id. (quoting 28 U.S.C. § 2254(e)(1)).

Cordera first contends that the state court's determination that he was not under the influence of alcohol or medication was unreasonable. That contention is meritless. Although he claims that he had taken medication earlier that day,

4

hospital tests were negative for alcohol or drugs.  Because Cordera has not provided "clear and convincing evidence" to rebut the "presumption of correctness" of the state court's factfinding, he cannot show that it was unreasonable.  See id. at 1155–56.

Cordera's second contention is that his statements should have been suppressed because he was "in custody" when the detectives interviewed him and he therefore should have received Miranda warnings.  "Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'"  Oregon v. Mathiason, 429 U.S. 492, 495, 97 S. Ct. 711, 714 (1977).  To determine whether someone is "in custody," we first look at the "circumstances surrounding the interrogation."  Thompson v. Keohane, 516 U.S. 99, 112, 116 S. Ct. 457, 465 (1995).  "Given those circumstances," we then consider whether a "reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave."  Id.  The "ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."  California v. Beheler, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 3520 (1983) (quotation marks omitted).

Some facts do suggest that Cordera was in custody.  For example, the detectives never told him that he was free to leave and he was brought to the hospital by an ambulance (instead of arriving on his own).  See Yarborough v.

5

Alvarado, 541 U.S. 652, 665, 124 S. Ct. 2140, 2150 (2004) (noting that those or similar facts "weigh in favor of the view" that a suspect is in custody). But other facts "weigh against a finding that [Cordera] was in custody." See id. at 664, 124 S. Ct. at 2149. The police did not take him to the hospital (although an officer accompanied him in the ambulance), the detectives who interviewed him did not place him under arrest or threaten to do so, the interview lasted only 41 minutes, and he was not arrested until several hours after the interview. See id. at 664–65, 124 S. Ct. at 2149–50; see also Mathiason, 429 U.S. at 495, 97 S. Ct. at 714 (noting the fact that an interview lasted only 30 minutes in deciding that a suspect was not in custody).

Because there are enough facts going either way on the issue, "fairminded jurists could disagree over whether [Cordera] was in custody." Yarborough, 541 U.S. at 664, 124 S. Ct. at 2149. The state court's decision was not contrary to, nor an unreasonable application of, clearly established federal law. See id. at 665, 124 S. Ct. at 2150 ("We cannot grant relief [under § 2254(d)(1)]. . . by conducting our own independent inquiry into whether the state court was correct as a de novo matter.").

Cordera's final contention is that his statements were involuntary. For a statement to be involuntary there must be "coercive police activity." Colorado v. Connelly, 479 U.S. 157, 167, 107 S. Ct. 515, 522 (1986). We gauge voluntariness

"in light of the totality of the circumstances" to determine whether the statements were "the product of an essentially free and unconstrained choice." Hubbard v. Haley, 317 F.3d 1245, 1252–53 (11th Cir. 2003) (quotation marks omitted).

Cordera relies on the Supreme Court's decisions in Beecher v. Alabama, 389 U.S. 35, 88 S. Ct. 189 (1967), and Mincey v. Arizona, 437 U.S. 385, 98 S. Ct. 2408 (1978), to argue that his statements were involuntary. In the Beecher case, the police obtained a confession from the defendant only after he was shot in the leg, two officers each pointed loaded guns toward his head, one of the officers threatened to kill him, and the other officer fired his rifle next to his ear. Beecher, 389 U.S. at 36–37, 88 S. Ct. at 190. The defendant reaffirmed his confession in the prison hospital while in intense pain and heavily sedated from frequent morphine injections. Id. The police obtained a confession from the defendant in the Mincey case while he was in the hospital with a gunshot wound, hooked up to various tubes to help him breath, receiving intravenous drugs, and unable to talk because of the tubes (he wrote down his responses). Mincey, 437 U.S. at 396, 398–401, 98 S. Ct. at 2415–18. The defendant confessed only after the officer had interviewed him for four hours, even though he repeatedly asked the officer to stop the interrogation until he could get a lawyer. Id.

The facts surrounding Cordera's interview differ significantly from the facts of those cases. The detectives' conduct does not even begin to approach that of the

7

officers in the <u>Beecher</u> case.  The <u>Mincey</u> case is also not on point.  Cordera was alert and able to speak, he never asked for the interview to stop, and he never asked for a lawyer.  The fact that he was depressed at the time of the interview is not enough, without more, to render his statements involuntary.  <u>See</u> <u>Connelly</u>, 479 U.S. at 162–67, 107 S. Ct. at 519–22.  Because the facts do not indicate that his statements were the product of "coercive police activity," <u>id.</u> at 167, 107 S. Ct. at 522, the state court's decision that his statements were voluntary was neither contrary to, nor an unreasonable application of, clearly established federal law.

**AFFIRMED.**

8