Alan Ray MAPYS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 10143.

United States Court of Appeals
Tenth Circuit.
April 25, 1969.

---

Leslie L. Conner, Jr., Oklahoma City, Okl., for appellant.

John Quinn, U. S. Atty. (Ruth C. Streeter, Asst. U. S. Atty., on the brief), for appellee.

Before MURRAH, PICKETT and HOLLOWAY, Circuit Judges.

PICKETT, Circuit Judge.

Alan Ray Mapys, the appellant, was indicted and convicted in the United States District Court of New Mexico for the interstate transportation of a 1965 Oldsmobile automobile knowing the same

to have been stolen, in violation of 18 U.S.C. § 2312, and sentenced to imprisonment for a term of three years. While being held by state officials on an open charge of murder, Mapys admitted that he stole the automobile in question in Houston, Texas and transported it to Albuquerque, New Mexico. On a pretrial motion the trial court suppressed this admission as evidence, but held that Mapys' later identification of the automobile and unsolicited statements to an F. B. I. agent relating thereto were admissible. The first question presented here is whether the identification of the automobile by Mapys and his unsolicited statements thereafter were compelled or impelled by the illegal confession, and therefore inadmissible in evidence.

The essential facts were: During the night of September 15–16, 1966 the Albuquerque police observed a 1965 Oldsmobile illegally parked adjacent to a vacant lot. The police removed the car and stored it at a private enclosed parking lot. The police investigation revealed that the automobile had been reported stolen in Houston, Texas a few days prior thereto. During the morning of September 16, 1966 Mapys and two associates were taken into custody for investigation in connection with a murder committed in Albuquerque. Mapys, upon being advised of his rights, refused to be interviewed by the police until after he had had an opportunity to consult an attorney. On the same day he appeared before a justice of the peace, where he again stated that he desired to consult an attorney and was advised that counsel would be appointed for him. After this appearance he was questioned by the local police, and without advice of counsel made an exculpatory statement in connection with the murder case. As a part of this statement, he admitted the theft of the Oldsmobile in Houston and its transportation to New Mexico. An F. B. I. agent acknowledged receipt of a copy of this confession, but was uncertain of the date on which he had received it. Three days later, while confined in the county jail, Mapys requested permission to obtain his clothing from the car. An undersheriff notified the F.B.I. agent, who arranged to be present at the parking lot where the car from which Mapys was to obtain the clothing was stored. The purpose of notifying the agent of these activities was to afford him an opportunity to obtain evidence that would implicate Mapys with the theft and interstate transportation of the car. At the parking lot, the F.B.I. agent displayed his credentials to Mapys, informed him that he was investigating the theft of a car from Houston, Texas, and adequately advised him of his rights. Without any direction from the deputy sheriff or the F. B. I. agent, Mapys located the stolen automobile and said, "This is the car we came here in, from Houston." The clothing was obtained and returned to the sheriff's office, where Mapys and his associates picked out the articles which belonged to each of them. Prior to leaving the parking lot, Mapys told the agent "that he would like to go into federal court on the Dyer Act, if possible, instead of going to state court." The F. B. I. agent returned to the sheriff's office with Mapys and sought to interview him. Mapys advised the agent that he would not discuss the case until he had an opportunity to consult with his attorney. No attempt was made to continue the interview, but Mapys again expressed his desire to be prosecuted in federal court on a Dyer Act violation. The following day the agent returned and was told by Mapys that he had not had an opportunity to consult his attorney. As a consequence, no attempt was made to interview him, but Mapys, without solicitation or questioning, asserted that his brother had not participated in the theft of the car and was not in it when it crossed the state line.

■■■ Relying upon the cases that enunciate the "fruit of the poisonous tree" doctrine,[1] and particularly the

1. United States v. Bayer, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654; Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; Silverthorne Lumber

recent case of Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047, it is contended that identification of the stolen car by Mapys and his unsolicited statements made thereafter should not have been admitted in evidence. No independent evidence connecting Mapys with the theft of the automobile or its interstate transportation was offered at trial. It is clear from *Harrison* that if the illegal confession impelled Mapys to identify the automobile or to make the extrajudicial statements, they were inadmissible. But all incriminating statements made after an illegal confession are not inadmissible. The connection between the unlawful conduct of police officers and the subsequent statements may "become so attenuated as to dissipate the taint" of preceding involuntary statements. Wong Sun v. United States, 371 U.S. 471, 487, 83 S.Ct. 407, 417, 9 L.Ed.2d 441. This later evidence is inadmissible only if it came about as a result of the existing illegality.[2] Wong Sun v. United States, *supra*, at 488, 83 S.Ct. 407; Green v. United States, 10 Cir., 386 F.2d 953. This principle was recognized in Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948. In this kind of case the question of admissibility remains one of voluntariness and lack of coercion as determined by all the attendant facts and circumstances.[3] Anderson v. United States, 10 Cir., 399 F.2d 753; Pece v. Cox, 10 Cir., 354 F.2d 913, cert. denied, 384 U.S. 1020, 86 S.Ct. 1984, 16 L.Ed. 2d 1044; Latham v. Crouse, 10 Cir., 338 F.2d 658, cert. denied, 380 U.S. 987, 85 S.Ct. 1361, 14 L.Ed.2d 280; *cf.* Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433, decided April 2, 1969.

■ Following an extensive pretrial hearing on a motion to suppress the trial court found that the questioned statements given to the F. B. I. agent and the identification of the automobile were voluntary. We think the record fully supports this finding. Mapys was never interrogated by the agent. He knew his right to have an attorney and exercised that right throughout. The evidence of the prosecution shows that Mapys' desire to go to the automobile and his unsolicited statements to the agent were in no way related to the confession made to state officers several days before. His statements were made in an attempt to assist his brother and to avoid a prosecution in state court. His request to be taken to the automobile was to satisfy his desire to obtain his clothing. Mapys' testimony to the contrary was rejected by the trial court. The F. B. I. agent could not prevent his statements and the

---

Co., Inc. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319.

2. In referring to this subject in the Wong Sun case, the Court said:
   "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959) * * *."

3. In Miranda v. Arizona, 384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694, the Court said:
   "In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." Compare Beecher v. Alabama, 389 U.S. 35, 88 S.Ct. 189, 19 L.Ed.2d 35.

state officers had no reason to deny his request to obtain his clothing. Considering all the facts and circumstances, we agree with the trial court that Mapys' actions and statements were not a product of the illegal confession, and that whatever burden was cast upon the Government to establish voluntariness and lack of coercion was satisfied. Rejection of the questioned statements and the automobile identification would be tantamount to holding that all incriminating statements, admissions and activities after an illegal confession are inadmissible in evidence. We find no decision which so holds.

At the close of the Government's case, Mapys moved for a judgment of acquittal upon the ground that the evidence was insufficient to sustain a conviction of the offense charged. The basis for this motion was that the only evidence offered to connect the accused with the unlawful interstate transportation of the automobile was his admission, which, if considered sufficient to establish guilty knowledge that the car was stolen and transported, was not corroborated.

■ To convict for a violation of the Dyer Act, 18 U.S.C. § 2312, the Government must prove that a motor vehicle was stolen and thereafter transported in interstate commerce by the accused with the knowledge that it was stolen. Allison v. United States, 10 Cir., 348 F.2d 152. The evidence is without conflict that the car in question was stolen in Houston, Texas and a short time thereafter was found abandoned in Albuquerque, New Mexico. To supply the remaining necessary element of the offense, the prosecution relied upon the identification of the vehicle by Mapys and his contemporaneous statement that "This is the car we came here in, from Houston." In this situation, the extrajudicial statement is one which would require corroboration.

■■ It is well settled that an accused cannot be convicted of a crime on his own uncorroborated confession or admission. Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192. But it is not necessary that the corroborative evidence be sufficient, independent of the statement, to prove the crime charged. The rule is satisfied if there is substantial independent evidence which will tend to establish the trustworthiness of the confession or incriminating statement. Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101; Zamora v. United States, 10 Cir., 369 F.2d 855, cert. denied, 386 U.S. 913, 87 S.Ct. 863, 17 L.Ed.2d 785; Yarbrough v. United States, 10 Cir., 309 F.2d 936. While there is no direct evidence of Mapys' guilty knowledge of the interstate transportation of the stolen vehicle, we think the circumstances, along with the statements and admissions, are not only sufficient to establish this knowledge, but also corroborate his voluntary statements and admissions. At his request, he led the officers to the stolen car, which he entered for the purpose of obtaining his personal effects, along with those of his companions. Prior to obtaining these personal effects, without any assistance or direction, he located the stolen automobile among a large number of other automobiles in the parking lot. After it was located by him, he acknowledged that he had ridden from Texas to New Mexico in it. From subsequent statements, it is clear that he knew that it was a federal crime to transport a stolen motor vehicle interstate, which he referred to by the popular title of the "Dyer Act". On two occasions after his visit to the stolen car, he stated to the F. B. I. agent that he preferred to be prosecuted in federal court for the federal offense. With reference to a prosecution under this act, in an attempt to absolve his brother, he stated to the agent that the brother "was not involved in the Dyer Act matter; that he did not help steal the car. That when he crossed the state lines, the brother had walked across the lines rather than riding in the car and was not involved." The issue here is not free from doubt, but we conclude that, considering the record as a whole, it does

968

more than create a suspicion of guilt and is sufficient for a jury to infer that Mapys knowingly participated in the illegal transportation of the stolen vehicle from Texas to New Mexico.

We have examined the court's instructions and those offered by the defense, and find that the instructions given fairly and adequately presented the case to the jury, and that there was no prejudicial error in the refusal to give the offered instructions.

Affirmed.