**Robert Edward NAIL, Petitioner,**

v.

**A. E. SLAYTON, Jr., Superintendent
Virginia State Penitentiary,
Respondent.**

**Civ. A. No. 72–C–48–H.**

United States District Court,
W. D. Virginia,
Harrisonburg Division.

Dec. 4, 1972.

Robert E. Shepherd, Jr., Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

Petitioner, Robert Edward Nail, has again petitioned this court for writ of habeas corpus. However, he has just recently requested a change of venue from the Western District of Virginia, Harrisonburg Division to the Eastern District of Virginia, Richmond, Virginia, on the following grounds: 1) he is presently incarcerated in the Richmond area, 2) respondent is located in Richmond, 3) his prison job is such that it would be more desirable for him to be close to Richmond; and 4) his legal advisors, although unpaid, are located in Richmond.

Before ruling on the motion to change venue, this court will briefly review petitioner's record in this court. His first petition for writ of habeas corpus was filed February 23, 1971 and alleged the following constitutional defects in his trial:

1) he made statements without the presence of counsel;

2) no cause existed for his commitment in a mental institution;

3) he was never taken before a magistrate;

4) he was denied bond;

5) he was denied a speedy trial;

6) he was denied a fair trial because the state refused to present his witnesses;

7) the court erred in not striking false statements made to the jury;

8) the jury was prejudiced against him;

9) he was denied a presentence report;

10) he was denied his fundamental rights;

11) the Virginia Supreme Court erred when it did not report the correct dates petitioner was tried and sentenced.

This first petition was dismissed without prejudice on February 24, 1971 for failure to exhaust state remedies.

A second petition was filed May 17, 1971 and alleged: 1) a denial of due process and equal protection of the law, 2) a denial of his right against self-incrimination, 3) double jeopardy, and 4) the same allegations which were made in paragraphs 5, 6, 9, and 11 of his first petition. This petition was dismissed without prejudice for failure to comply with an order of the court.

A third petition was filed November 11, 1971 alleging 1) a denial of constitutional rights, and 2) prejudice of the state court judge in his habeas corpus proceeding. The fourth petition was filed November 26, 1971, and it alleged prejudice of both the trial judge and the state's assistant attorney general. These two petitions were consolidated by the court and dismissed without prejudice on January 10, 1972 for failure to exhaust state remedies.

Before enumerating the allegations set forth in the present petition which was filed August 23, 1971, the court, being of the opinion that the present petition has no merit, hereby denied petitioner's request for a change of venue.

Petitioner contends in the following allegations that his conviction and subsequent incarceration are unconstitutional: 1) that the prosecution used inadmissible and illegal evidence during his trials; 2) that he was denied a speedy trial; 3) that proper jury instructions were refused; 4) that the trial court refused to safeguard his right to witnesses; 5) that the trial court improperly denied him bail and bond; 6) that the trial court improperly allowed him to be tried for his two offenses separately; 7) that the trial court failed to recognize discrepancies in witnesses' testimony; 8) that Virginia's single verdict system is unconstitutional; 9) that there was insufficient evidence to convict him; and 10) that perjured testimony was used.

The petitioner was arrested on January 21, 1969 for burglary and malicious wounding. He was taken before the Winchester Municipal Court on January 29, 1969, at which time he requested that the court appoint an attorney to represent him. Counsel was thereupon appointed and a preliminary hearing was scheduled for February 12, 1969. At the preliminary hearing the court bound the case over to the Grand Jury of the Winchester Corporation Court, which indicted petitioner on February 24, 1969.

Immediately after he was indicted his attorney moved that he be given psychiatric and mental examinations, which motion the court granted. After an initial psychiatric examination in which the examining doctor stated that further investigation would be necessary, the court, on motion of defense counsel, ordered petitioner committed to Southwestern State Hospital for further examination. This action occurred on April 14, 1969. On July 11, 1969 the state hospital reported that the petitioner, while having dull normal intelligence, was competent to stand trial.

Petitioner was arraigned on July 28, 1969 for both offenses. At the arraignment proceeding, petitioner's court appointed attorney requested that new counsel be appointed to represent petitioner because of inability and difficulty in working with petitioner in preparing his case. New counsel was appointed, and the trial for the offenses charged in both indictments was set for September 25, 1969.

On September 22, 1969 the Commonwealth's Attorney requested a continuance in the trial for malicious wounding because the victim was then undergoing surgery and would be unable to attend the trial. A continuance was granted, but no new trial date was set.

The petitioner was tried and convicted for burglary on September 25, 1969. On October 27, 1969 his trial for malicious wounding was set for December 23, 1969. Again because of conflicts with his attorney, the petitioner moved on November 5, 1969 that the court dismiss his court appointed attorney. His motion was granted on November 24, 1969, and new counsel was appointed to represent him. Because this attorney was

unfamiliar with petitioner's case, he requested that the trial be continued to enable him to adequately prepare for it. Although petitioner objected to this motion, the court decided that to preserve fairness, a continuance should be granted, and on December 22, 1969 the court set March 19, 1970 as the trial date.

Petitioner was tried on this date and convicted of malicious wounding. Appeals from the burglary and malicious wounding convictions were denied on April 28, 1970 and January 19, 1971 respectively.

■ The court will now consider petitioner's various allegations. Petitioner's first contention is that inadmissible and illegal evidence was used at both trials. The problem revolves around a statement made to a police officer before the *Miranda* warnings had been given and various other statements made after the warnings were given.

According to the evidence established during the trial, the petitioner was seen leaving the house where the crimes took place. After several requests by police officers to give himself up, he walked over to two police officers and handed one of them his gun. As this officer began to unload it, and before any of the *Miranda* warnings had been given, petitioner made the following statement: "I think the man I shot upstairs is dead." He was then taken to a patrol car, informed of his rights, and then made various other statements concerning his desire to kill his wife.

At both trials this statement was placed before the jury, and defense counsel in each case objected to its introduction into evidence because no warnings had been given immediately upon petitioner's arrest. The trial court sustained the objection in each case and instructed the jury to disregard it. Petitioner apparently contends that the harm done by this statement could not be rectified merely by instructing the jury to disregard it.

■ The court does not believe that this statement was so highly prejudicial that it could not be corrected by the judge's instructions to the jury. While the court believes that no substantial harm was done by the statement, the court does not rely entirely upon its own opinion. Based on the law in the area the trial judge would have been justified in allowing the statements into evidence.

The theory behind the Supreme Court's decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) was that confessions and statements induced by coercion, fraud, and misrepresentation should not be used against the individual who made them at his trial. Mapys v. United States, 409 F.2d 964 (10 Cir. 1969); Cohen v. United States, 405 F.2d 34 (8th Cir. 1968). The court in *Miranda* believed that under our system of justice, certain procedural safeguards were necessary to protect the rights of individuals accused of a crime. A person's constitutional rights were violated if his conviction was based in whole or in part on any involuntary confession regardless of its truth or falsity. To insure that every person was aware of his rights, the court required that the arresting officers inform the individual of his rights prior to any interrogation.

■■ The general practice now used by law enforcement officials is to inform the individual of his rights immediately upon his arrest. While this procedure is perhaps the most preferable, *Miranda* does not require it. *Miranda* only requires that the individual be apprised of and understand his rights prior to any interrogation or questioning of him by officials. Therefore until the individual was subjected to such questioning or to such surroundings which a court would consider coercive to the extent that involuntary statements might be procured, the individual need not be apprised of his rights. Clearly an individual must be informed of his rights before he is jailed or placed in any type of confinement or isolation which in this court's opinion would include a police car.

*Miranda* also held that statements given freely and voluntarily without any compelling influences were still admissible. Thus statements made contemporaneously with the individual's arrest have been held to be admissible. Stone v. United States, 385 F.2d 713 (10th Cir. 1967); Diaz v. United States, 264 F. Supp. 937 (E.D.La.1967).

In the present case the statement was made almost immediately after petitioner surrendered. No questioning had taken place before the statement was made, nor had petitioner been placed in any intimidating surroundings. Based upon the evidence the court believes that the statement was made freely and voluntarily, and without coercion, fraud, or misrepresentation. Had the trial court allowed the jury to consider the statement, no error would have resulted. The apparent serious consequences of having the statement heard by the jury, thereby greatly prejudicing them against the petitioner do not exist. While the statement did not fall under the *Miranda* rule, the trial judge did exclude it from the evidence and did instruct the jury to disregard it. If no error would have resulted by allowing the jury to consider that statement, the court finds that no error resulted when the jury heard it and was then instructed to disregard it, nor when the court refused to grant the defendant a mistrial.

■ Petitioner's second contention is that he was denied a speedy trial. Although not stated with any great degree of particularity, it appears that he bases this allegation on § 19.1–191 of the Virginia Code. Under this code section every person indicted for a felony must be tried within three terms of court after his indictment unless he falls within certain enumerated exceptions. Petitioner was tried thirteen months after his indictment, which is well after the three terms of court rule. Petitioner, however, falls within several enumerated exceptions, § 19.1–191(1), (2), (4). Under these exceptions the three terms of court rule does not apply if a defendant is insane or confined for observation, if a witness cannot attend because of sickness, or if a continuance has been granted on motion of the accused.

■■ While petitioner did fall within all three of these exceptions, the federal court is not bound by the state's interpretation of what constitutes a speedy trial. If § 19.1–191 is itself a violation of the Sixth Amendment or if the time involved in the present case did in fact deprive petitioner of a speedy trial, then the federal court may invalidate the state statute or the state procedure. Delph v. Slayton, 343 F.Supp. 449 (W.D. Va.1972).

■ The court finds nothing unconstitutional about § 19.1–191 itself. Nevertheless the procedural application of the statute may result in the deprivation of an individual's Sixth Amendment rights. In the present case, however, the petitioner was not deprived of his right to a speedy trial.

The first delay resulted when petitioner was committed to a hospital for observation to determine his competency to stand trial. This was done for petitioner's protection. The second delay occurred when new counsel was appointed for him. To insure that due process was followed, the court allowed the new attorney extra time to prepare for trial. A third delay resulted when the victim was hospitalized for treatment of wounds received from petitioner. This delay resulted in the postponement of the malicious wounding trial. The final delay was occasioned when petitioner again requested that new counsel be appointed to represent him. This request was granted, but to insure that the new defense counsel could adequately prepare for trial, the court continued the malicious wounding case from December to March.

The Supreme Court in United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966) stated that the purpose of the Sixth Amendment was to prevent undue and oppressive incarceration prior to trial, minimize anxiety and concern accompanying public accusa-

tions, and to limit the possibilities that long delay will impair the ability of the accused to defend himself.

According to the test announced in *Ewell*, the delay must have occasioned some harm to the defendant, such that his ability to defend himself has been diminished. See Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1966). Petitioner in the present case does not allege that he was hindered in any way in his ability to defend himself, nor does this court find from a review of the record that any disability existed. Petitioner's second contention is without merit.

Third, petitioner contends that the trial court refused to give proper instructions to the jury. While this court would agree that with respect to petitioner's point of view proper instructions were refused, the determination of which instructions to grant and to refuse lies solely within the discretion of the state courts. Unless there appears from the record sufficient evidence from which a federal court may determine that an individual's right to a fair trial was impinged, the question of the correctness of instructions does not raise the requisite federal question required by 28 U.S.C. § 2254(a), but is a matter to be determined solely within the state courts. Grundler v. North Carolina, 283 F.2d 798 (4th Cir. 1960), cert. denied, 362 U.S. 917, 80 S.Ct. 670, 4 L.Ed.2d 738 (1960).

Petitioner's next allegation is that the trial court did not safeguard his right to witnesses. As he has done with several other allegations, this contention is merely stated with no additional description or supporting facts. It is not the duty of federal courts to try to second guess the meanings of statements and intentions of petitioners. Rather the duty is upon the individual who asserts a denial of his constitutional rights to come forth with a statement of sufficient clarity and sufficient supporting facts to enable a court to understand his argument and to render a decision on the matter. While the court is in a quandary with respect to this allegation, it would appear that petitioner is contending that his defense attorney did not call certain witnesses in his behalf.

The decision of which witnesses to call and how the defense will be conducted lies solely within the discretion of defense counsel and is generally referred to as trial tactics. This court has held that mistakes in trial tactics do not deprive an individual of his constitutional rights. Hancock v. Slayton, 341 F. Supp. 436 (W.D. Va.1972); Camm v. Peyton, 299 F.Supp. 485 (W.D. Va. 1969); Lunnermon v. Peyton, 281 F. Supp. 986 (W.D., Va.1968).

Petitioner's fifth allegation is that the trial court improperly refused to grant him bail. While the right to bail is guaranteed by the Eighth Amendment, neither this Amendment nor the Fourteenth Amendment require that everyone charged with a crime be released on bail pending his trial. Mastrian v. Hedman, 326 F.2d 708 (8th Cir. 1964), cert. denied, 376 U.S. 965, 84 S.Ct. 1128, 11 L.Ed.2d 982 (1964); Wansley v. Wilkerson, 263 F.Supp. 54 (W.D. Va.1967). The court in *Mastrian* stated:

> While it is inherent in our American concept of liberty that a right to bail shall generally exist, this has never been held to mean that a state must make every criminal offense subject to such a right or that the right provided as to offenses made subject to bail must be so administered that every accused will always be able to secure his liberty pending trial.

Mastrian v. Hedman, 326 F.2d 708, 710 (8th Cir. 1964).

A trial judge may deny bail if he feels that the release of the accused will endanger the community. Wansley v. Wilkerson, 263 F.2d 54 (W. D. Va.1967). Because of the statements made by petitioner concerning his desire

to kill his wife, the trial judge acted within his discretion in denying bail.

■ In addition the mere failure to release an individual on bail is not error unless some harm has been occasioned by the trial court's action, such as the inability of the individual to properly prepare his defense. While petitioner has pleaded for his right to bail, he has not put forth any evidence to establish that any harm resulted from his denial of bail. A review of the history of petitioner's two cases leads this court to believe that petitioner was not placed at a disadvantage in preparing his defense.

■ Sixth, petitioner alleges that his conviction is unconstitutional because he was tried for each offense at a different trial. It has been held that no federal habeas corpus grounds are presented where an attorney permitted all the charges against a single defendant to be tried in one trial. Via v. Perini, 415 F.2d 1052 (6th Cir. 1969); Worts v. Dutton, 395 F.2d 341 (5th Cir. 1968). This court holds that where an individual is tried separately for each offense, no federal habeas corpus grounds are presented.

■ Petitioner next contends that the trial court failed to recognize discrepancies in the testimony of certain witnesses. He undoubtedly is contending that the trial court judge should have instructed the jury to disregard those witnesses whose testimony was adverse to his position. Not only does this allegation fail to raise the requisite federal question, but the duty to recognize, analyze, and distinguish between discrepancies in the testimony of witnesses during the course of the trial lies solely within the province of the jury.

■ The eighth contention raised by petitioner deserves closer analysis. He contends that the Virginia system of allowing the jury to determine both guilt and punishment at the same time is a denial of his Fifth Amendment rights. If a defendant is tried without a jury in Virginia, then he is given the opportunity to present to the court matters concerning extenuation, mitigation, and explanation. However, if a defendant elects to be tried by a jury, then he is not given the opportunity to present such matters after the trial and before sentence is imposed. Therefore in order to put these matters before the jury, petitioner contends that a defendant must take the witness stand, thereby waiving his right against self-incrimination because he must answer all questions asked.

While this argument has appeal, the Supreme Court has ruled in McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1970) that it is without merit. In this case the court was concerned with the procedure followed in two states, California and Ohio. Under California procedure the jury determines guilt in one hearing and punishment in a separate second hearing. Ohio follows a system almost exactly like that followed in Virginia—that is, that the jury determines both guilt and punishment at one time.

With respect to the procedure followed in Ohio, the court stated:

> Petitioner's contention therefore comes down to the fact that the Ohio single-verdict trial may deter the defendant from bringing to the jury's attention evidence peculiarly within his own knowledge, and it may mean that the death verdict will be returned by a jury which has never heard the sound of his voice. We do not think that the possibility of the former is sufficiently great to sustain petitioner's claim that the single-verdict trial may deprive the jury of a rational basis for fixing sentence . . . . We have held that failure to ensure such personal participation in the criminal process is not necessarily a constitutional flow in the conviction. Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). We do not think that Ohio was required to provide an opportunity for petitioner to speak to the jury free from any

adverse consequences on the issue of guilt.

McGautha v. California, 402 U.S. 183, 220, 91 S.Ct. 1454, 1474, 28 L.Ed.2d 711 (1970).

Virginia has upheld the constitutionality of its single-verdict system. Bloodgood v. Commonwealth, 212 Va. 253, 183 S.E.2d 737 (1971). Because of the decisions in *McGautha* and *Bloodgood*, this court holds that petitioner's eighth contention is without merit.

■ Petitioner next contends that there was insufficient evidence to convict him. The courts have repeatedly held that unless a conviction is totally devoid of evidence, federal courts cannot consider the sufficiency of the evidence in habeas corpus petitions. Holloway v. Cox, 437 F.2d 412 (4th Cir. 1971); Williams v. Peyton, 414 F.2d 776 (4th Cir. 1969); United States ex rel. Cunningham v. Maroney, 397 F.2d 724 (3rd Cir. 1968), cert. denied, 393 U.S. 1045, 89 S.Ct. 663, 21 L.Ed.2d 594 (1969).

■ Petitioner's final contention is that perjured testimony was used against him. While there is some validity to this argument, this court finds the testimony involved to be non-prejudicial and harmless error. During the trial, one witness told the jury that petitioner made statements to her in October about his intentions to kill his wife. At a state habeas corpus hearing petitioner was able to prove that he was not in Winchester when these statements were alleged to have been made. This witness then testified that while she was certain that petitioner had made such statements, she was uncertain as to the exact date they were made stating that it was possible that they could have been made in November. The court finds that this testimony did not deprive petitioner of a fair trial and that the error was non-prejudicial and harmless.

Petitioner's petition for writ of habeas corpus is denied.