**UNITED STATES of America, Plaintiff,**

v.

**Alberto SABAN–GUTIERREZ, Defendant.**

**Crim. No. 90–377 (JAF).**

United States District Court, D. Puerto Rico.

Oct. 21, 1991.

---

Asst. U.S. Atty., Rosa Emilia Rodríguez, Daniel F. López–Romo, U.S. Atty., D. of Puerto Rico, San Juan, P.R., for plaintiff.

Miriam Ramos–Grateroles, San Juan, P.R., for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

On October 10, 1991, this court entered an order granting defendant Alberto Sabán–Gutiérrez a new trial in the interest of justice pursuant to Fed.R.Crim.P. 33. (Docket Document No. 72). The court's ruling was based on the discovery of new evidence relating to defendant's mental competency, which came to light in the period after the jury verdict and before sentencing. We found that defendant suffers from mild to moderate retardation and that this condition may have affected his ability to form the intent necessary to commit the offense with which he was charged and convicted.[1] We also found no fault on the part of defense counsel for not discovering defendant's condition prior to or during trial. After ordering two psychological evaluations and holding a competency hearing pursuant to 18 U.S.C. § 4241, we ordered that a new trial be held on October 24, 1991, at which time evidence of defendant's mental capacity could be put before the jury for their consideration.

On October 17, 1991, the government filed a motion for reconsideration of our October 10, 1991 order.[2] (Docket Document No. 73). The government argues that this court has acted beyond the scope of its authority pursuant to Fed.R.Crim.P. 33 and is without power to order a new trial. While mixing its arguments, the government seems to base its position on two grounds. First, it is claimed that the court exceeded its power by ordering the new trial *sua sponte*. Also, the government argues that a district court is without jurisdiction to entertain a new trial motion when it is not made within the statutory time period for entertaining such motions and that defendant's "motion" or the court's *sua sponte* action was untimely.

Having *again* carefully reviewed the record of this case, including the transcripts of the trial and the August 15, 1991 hearing as to defendant's mental capacity, and after some brief research into the legal issues, we rule as follows. First, we find that there is a basis for granting a new trial on the discovery of new evidence—the extent of defendant's limited mental capacity—and, therefore, the granting of a new trial is timely under Rule 33. Second, we rule that, while defendant filed no written motion for a new trial, the circumstances surrounding the post-verdict, pre-sentence proceedings examining defendant's mental condition, including the government's participation, resulted in the parties being put on notice as to the possibility that a new trial might be granted in the interest of justice and that no objection was raised by either party prior to the court's October 10, 1991 order. Third, even if it were to be found that the court acted beyond the scope of its power under Rule 33, given the nature of the proceedings—the determination of defendant's mental competency to stand trial and to assist in his defense—the court would be acting within the statutory

1. Defendant Gutiérrez and three others were indicted for possession with intent to distribute 2,178 kilograms of marihuana while on the high seas aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C.App. § 1903(a), as well as for aiding and abetting in the same, in violation of 18 U.S.C. § 2.

2. We note here that, in their motion, the government claims that our order was not received at the United States Attorney's office until October ·16, 1991. However, the order was filed on October 10, 1991 and the Clerk's office noticed the government on October 11, 1991. By not filing their motion until October 17, 1991, a few days before trial, the government has put the court in the position of having to rule on a motion involving complex legal issues with very little time. As will be discussed *infra.;* the government's waiting until the eve of the second trial to raise the issue presently before the court when for months it, at the very least, had a strong suspicion that a new trial may be the only appropriate remedy, does very little to promote the interests of justice and to assure that individuals receive fair treatment before United States tribunals.

authority granted it under 28 U.S.C. §§ 1441–1447 and that the evidence before the court, including the testimony by Dr. González Villamil and the two psychological evaluations, mandates a new trial as the most appropriate remedy to balance the parties' interests and to assure a just resolution of the matter. However, in order to avoid any potential double jeopardy problems, the rationale given for limiting a district court's power under Rule 33, we ORDER defendant, if he seeks a new trial, to file a motion for a new trial based on newly-discovered evidence by *12:00 Noon, Wednesday, October 23, 1991.*

Accordingly, we *deny* the government's motion seeking the court to vacate its new trial order. Below, we outline the bases for our rulings.

## I.

### *Background*

Prior to trial, defendant's counsel, attorney Ramos, conferred with her client on nine different occasions. According to an affidavit submitted by counsel, (Docket Document No. 65), defendant did describe his participation in the activities giving rise to the indictment and did in some way assist counsel in preparation of his defense. Other than crying, counsel noticed nothing that would lead her to question his mental capacity.

Defendant was tried together with two codefendants.[3] At trial, defendant testified as to his personal circumstances, his work, his employment by co-defendant Rojas, and the circumstances surrounding his arrest. Again nothing in his testimony confirmed that his mental capacity might be below the norm, although on direct examination, he mentioned that he had cried at several points during the arrest process. Testimony by Coast Guard officer Villamil also confirmed that, subsequent to being detained, defendant was taken to the bathroom and, after finishing, came out crying.

It was at this moment that, according to the agent's testimony, he made inculpatory statements admitting that he had done the "smuggling"[4] because he needed the money for his family and that his wife had told him not to do it. (Docket Document No. 70, Tr. at 28, 53–54). The jury rendered a verdict convicting the three defendants.

From the court's own memory during trial, there was no evidence to suspect that Sabán was suffering from the type of mental condition with which the court is now confronted. It is this trial judge's recollection that he seemed to be extremely ignorant, extremely basic in his reaction and responses, unattentive (almost "spaced out"), childish, and very fearful. On the contrary, Abel Rojas, the captain of the boat, impressed the court as being very intelligent, capable of manipulating people through his apparent cordiality and agreeable personality. Now, in hindsight, the court does see that what was observed at trial is consistent with the findings of the psychologists presented *infra.* with respect to Sabán's mental capacity.

As part of the pre-sentencing proceedings, on March 11, 1991 counsel for defendant moved the court for a psychological evaluation. (Docket Document No. 35). In the motion, counsel stated that defendant, "although competent to stand trial has shown the undersigned diminished capacity and lack of judgment." Counsel also stated that, while defendant's condition did not amount to a defense, his IQ should be taken into account for sentencing purposes. On March 18, 1991, the court granted the motion and ordered a psychological evaluation.

On June 3, 1991, defendant submitted the psychological report of Dr. González Villamil, a clinical psychologist. Defendant received a diagnostic interview and was administered the Wechsler Adult Intelligence Scale and the Bender Visual Motor Gestalt Test.[5] Dr. González reported that,

---

**3.** Defendant Rojas, the Captain of the ship, was tried separately.

**4.** In response to prosecutor's question that Rojas had let it slip that the trip for which defendant was hired was for smuggling, defendant replied that he thought the smuggling involved whiskey,

cigarettes, household appliances, lard or rice. (Docket Document No. 71, Tr. at 21–22).

**5.** The psychologist stated in his report that a third test, the Minnesota Multiphasic Personality Inventory, was also to be administered but was not since, given the results of the Wechsler

although on first impression defendant appeared to be a person of normal intelligence, almost immediately the clinician noted that he was dealing with someone with subnormal intellectual functioning. It took defendant three times as long as the norm to complete one of the tests. The test results revealed that defendant was functioning at slightly above the moderate mental retardation range of intelligence with an IQ of 57. According to the profile of a person within this range, defendant is a person who is trainable, can talk and take care of himself with some supervision, would probably be unable to pass the second grade in academic subjects (which was defendant's actual educational level). As an adult, a moderately retarded person could support himself through unskilled or semi-skilled work under close supervision. When under stress, a person in this range needs supervision and guidance and would have difficulty making independent decisions. The psychologist's opinion was that defendant's intellectual functioning is seriously impaired in all areas of his intellect. Based on this, the clinician further opined that defendant can "be easily misled and taken advantage of by others." Because of defendant's need to function in a structured environment familiar to him, the psychologist recommended that defendant be returned to his home in Colombia.

On June 7, 1991, defendant's counsel filed an amended motion objecting to the presentence report, which denied defendant two points for acceptance of responsibility. (Docket Document No. 59). Also, counsel sought to use the psychologist's report to argue that defendant's diminished mental capacity should be considered for departure purposes at sentencing in light of the offense charged and his minimal participation. The government opposed this motion arguing against an adjustment for acceptance of responsibility on the grounds that defendant elected to go to trial and to testify. (Docket Document No. 61). The government also argued against any downward departure based on defendant's mental condition.

It was at this point that the court found itself in a quandary. The psychologist's report revealed that defendant suffered from a mental defect that might affect his ability to appreciate the nature and quality of the criminal conduct for which he was convicted. At the same time, he had been convicted by a jury who had not had the opportunity to hear any evidence as to defendant's mental condition. Also, this discovery was put before the court in the sentencing context and not under a Rule 33 motion for new trial based on newly-discovered evidence. Given the nature of the evidence and the limited purpose sought for its use (solely for sentencing purposes), the court felt it important to seek clarification. We, therefore, ordered counsel to file a sworn statement answering the following questions.

1. When in time did you notice that Mr. Sabán–Gutiérrez' condition was of such magnitude that required notice to the court?

2. If the suspicion as to mental retardation existed before trial, why did counsel fail to consider the filing of a Fed. R.Crim.P. 12.2 motion or a pretrial request for mental examination?

3. What are the reasons for not requesting a Fed.R.Crim.P. 33 remedy (a new trial) as a result of the above?

4. If Sabán–Gutiérrez is mentally retarded and could have been easily misled by others with superior intelligence, why should the remedy be only a downward departure for sentencing purposes where the court is bound with a statutory mandatory term of imprisonment of ten years?

(Docket Document No. 63). The court also ordered a hearing to be held on August 15, 1991, at which point these matters would be addressed and at which Dr. González would testify. The court concluded its order with these words.

Counsel and the government are expected to address these serious issues, inasmuch as we all have an obligation to make certain that a miscarriage of jus-

_____

test, it was determined that defendant did not possess normal intelligence and any results

from this third test would not be valid.

tice does not occur. The time to correct any mistake is now, and not years down the road through 28 U.S.C. § 2255 habeas corpus proceedings. Honesty and sincerity in addressing the issues will not be penalized by the court in any form or fashion.

In compliance with the court's order, attorney Ramos filed an affidavit answering the court's inquiries on August 7, 1991. (Docket Document No. 65). She admitted that it was not until after trial that she noticed that defendant may have been suffering from some form of mental retardation and, even then, she could not appreciate the fact that he was not able to stand trial. Because of this, she filed no Rule 12.2 motion prior to trial. As to the failure to file a Rule 33 motion, attorney Ramos stated:

> 7. The undersigned is under the impression that it would be better to request the downward departure and then if not granted file for a motion under Rule 33, since the seven (7) day period after verdict which states this Rule had elapsed when the psychologist certified his mental retardation.

The hearing on defendant's mental condition was held on August 15, 1991. Dr. González gave testimony. (Docket Document No. 76, *Transcript*). He expanded on his report and explained that, along with the defendant's full scale IQ of 57, in eight of the eleven intellectual sub-tests administered, defendant scored as moderate to severely retarded. Areas in which Sabán was found to be in the severely retarded range included general knowledge (score 30), orientation to practical situations, memory, concentration and vocabulary. The clinician's conclusion was that defendant could be easily deceived and manipulated. After hearing the testimony, the court ordered counsel for the parties to meet on that same day and try to find an alternative that would obviate the need for a new trial. Counsel would then inform the court of the result of the meeting. The court concluded by saying to the parties

that if they could not come up with an alternative, a new trial would be granted (*Id.* Tr. at 14).

On August 19, 1991, this court entered a further order. (Docket Document No. 67). The court stated that "[i]n the procedural stage this case is now found, the only remedy that could be afforded this defendant would be a new trial under Fed.Crim.P. 33 in the interest of justice." Also, in the order we noted that at the August 15, 1991 hearing, the government requested the court to consider the possibility of a second psychological evaluation before deciding whether a new trial should be granted.[6] The court acceded to the government's request and ordered defendant examined by Dr. Luis Umpierre–Vela.

Dr. Umpierre–Vela's report, (Docket Document No. 72, Attachment to Order), was consistent with the facts recited above. As soon as he was alone with the clinician, defendant began to cry. He was cooperative but slow during the evaluation process. The full scale IQ result was 54. The psychologist found defendant's overall intellectual functioning level to be within the mild mental retardation range. The report concluded that, while defendant "is able to distinguish between right and wrong at a very simple level," he "is unable to understand clearly the charges made upon him and to assist in his defense."

Thereafter, on October 10, 1991, the court entered its order which is the subject of this reconsideration motion.

## II.

### *Discussion*

#### A. *Rule 33 Jurisprudence*

Fed.R.Crim.P. 33, in relevant part, provides:

> The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice.... A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment,.... A mo-

---

**6.** On one of the occasions, we met with the prosecutor and defense counsel in chambers and the second psychological evaluation was requested. We agreed to the same before final-

ly passing on the remedy to be afforded. Those attending discussed with the court various alternatives, including the granting of a new trial.

tion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7–day period.

The government argues that circuit courts which have ruled on the issue have found that, under Rule 33, a district court is without power to *sua sponte* order a new trial. *United States v. Brown*, 587 F.2d 187, 189 (5th Cir.1979); *United States v. Newman*, 456 F.2d 668, 669–70 (3rd Cir. 1972); *United States v. Green*, 414 F.2d 1174, 1175 (D.C.Cir.1969); *United States v. Vanterpool*, 377 F.2d 32 (2d Cir.1967); 3 C. Wright *Federal Practice and Procedure Criminal 2d* § 551 at 238–41 (1982). The government relies on the Notes of Advisory Committee on Rules on the 1966 Amendment to Rule 33.

> The amendments to the first two sentences make it clear that a judge has no power to order a new trial on his own motion, that he can act only in response to a motion timely made by defendant. Problems of double jeopardy arise when the court acts on its own motion. See *United States v. Smith*, 331 U.S. 469 [67 S.Ct. 1330, 91 L.Ed. 1610] (1947). These amendments do not, of course, change the power which the court has in certain circumstances, prior to verdict or finding of guilty, to declare a mistrial and order a new trial on its own motion. [citations omitted].

Wright goes on to comment that "[t]he amended rule also does not bar the court from suggesting to defense counsel that a motion for a new trial might be appropriate." Wright § 551 at 241. However, the government's position is that, in the absence of a formal motion by defendant, Rule 33 bars any type of *sua sponte* order by the court under Rule 33.

Also, our circuit has held that the time limits found in Rule 33—7 days for all grounds except that of newly discovered evidence and 2 years for the latter—are jurisdictional and the district court has no discretion to grant a new trial motion not timely filed. *United States v. Lema*, 909 F.2d 561, 565 (1st Cir.1990); *United States v. Fontanez*, 628 F.2d 687, 691 (1st Cir. 1980), *cert. denied*, 450 U.S. 935, 101 S.Ct.

1401, 67 L.Ed.2d 371 (1981); *See also United States v. Smith*, 331 U.S. 469, 474–475, 67 S.Ct. 1330, 1333–34, 91 L.Ed. 1610 (1947); *United States v. Coleman*, 811 F.2d 804 (3rd Cir.1987), *cert. denied*, 490 U.S. 1070, 109 S.Ct. 2074, 104 L.Ed.2d 638 (1989); *United States v. Beran*, 546 F.2d 1316, 1319 n. 1 (8th Cir.1976) *cert. denied*, 430 U.S. 916, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977). Therefore, we must first resolve whether defendant could make a timely motion and, if so, whether, under the circumstances outlined above, the court would have any statutory authority to *sua sponte* order a new trial.

### 1. Was the Motion Timely?

■ Here, defense counsel's opinion notwithstanding, it is clear that a motion for new trial could have been filed in March 1991 at the time counsel moved for a psychological evaluation. Rule 33 contemplates a two-year period to make a new trial motion based on newly-discovered evidence. Counsel for defendant explained in her affidavit that the reason she failed to file such a motion was that, at the moment the psychological report raised the specter of mental incompetency, more than seven days had passed since the verdict. Why counsel failed to characterize this psychological evaluation as "newly discovered evidence" remains a mystery to the court. However, should this evidence be found to be "newly discovered," then a new trial motion would have been timely in March 1991 (and could still be timely filed as of this date).

■ In order to grant a new trial motion on the basis of "newly discovered" evidence, the moving party must

> [d]emonstrate that: (1) the evidence was unknown or unavailable to the defendant at the time of trial; (2) failure to learn of the evidence was not due to lack of diligence by the defendant; (3) the evidence is material, and not merely cumulative or impeaching; and (4) it will probably result in an acquittal upon retrial of the defendant.

*United States v. Wright*, 625 F.2d 1017, 1019 (1st Cir.1980); *Lema*, 909 F.2d at 566; *United States v. Uribe*, 890 F.2d 554, 560 (1st Cir.1989); *United States v. Martin*,

815 F.2d 818, 824 (1st Cir.), cert. denied, 484 U.S: 825, 108 S.Ct. 89, 98 L.Ed.2d 51 (1987). Here we find the record compellingly demonstrates that the four *Wright* factors have been met by the evidence of Sabán's mental competency.

First, it is clear that defendant's mental condition was unknown prior to and during trial. Attorney Ramos' affidavit clearly reflects the fact that, although she had numerous meetings with defendant, she did not detect any sign of a person with moderate mental retardation. The psychologists' evaluations concurred that, on first meeting defendant, there is no immediate indication of any intellectual dysfunction. His basic social skills mask his low IQ moderately well. Even this trial judge's recollection of defendant at trial gave no cause to question his mental competence. While we may expect many things of attorneys, we cannot expect them to be trained psychologists or psychiatrists. Therefore, we find that the first *Wright* factor is clearly established in the record.

Flowing from the first factor, we also find that there was no failure of due diligence on defendant's part. Here, given the nature of the newly-discovered evidence, one could not expect defendant him-self to raise the issue. And as we have just found, neither could counsel have been expected to discover the fact, given the limited contact she had with defendant. In fact, it seems from the record that the persons in the best position to detect defendant's limited IQ were the Coast Guard officers who arrested Sabán, especially Villamil who spent time with him immediately after arrest, as well as those who held him in custody pending trial. In any case, we find that the failure to learn of defendant's mental condition was not due to lack of diligence on defendant's part.

■ The third factor, the materiality of the evidence, is also satisfied in this case. Here, we think that the evidence of defendant's moderate retardation goes to the element of *mens rea*, that is, defendant's ability to form the requisite criminal intent to commit the offense. The psychological reports and the psychologists' testimony provide evidence of defendant's severely limited ability to think and reason independently, as well as his need for supervision. The psychological evidence clearly creates a material issue as to intent that was not raised at trial in any way, shape or form.[7]

The final *Wright* factor—probable acquittal on retrial—also favors granting a

---

7. Defendant's counsel referred to Sabán's condition as being one of diminished capacity. The problem with this characterization is that this Circuit's law, as it stands, does not seem to allow a defendant to proffer evidence of diminished capacity *unless* one relies on the insanity defense. *U.S. v. Kepreos*, 759 F.2d 961, 964–65 (1st Cir.), *cert. denied*, 474 U.S. 901, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985); *see United States v. White*, 766 F.2d 22, 24 (1st Cir.1985) (rejecting evidence demonstrating the diminished capacity defense and finding support for this position in the language of 18 U.S.C. § 17).

However, in a 1989 First Circuit case, *U.S. v. Lopez–Pena*, 912 F.2d 1536, 1541–42 (1st Cir. 1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 2886, 115 L.Ed.2d 1052 (1991), the court expressed some willingness to hear arguments as to whether this circuit should adopt the rule allowing the presentation of evidence of diminished capacity or mental abnormality as to the issue of *mens rea*. In *Lopez–Pena*, the district court did not allow a psychiatrist's deposition testimony where, in his opinion, defendant's mental condition fell short of an inability to distinguish between right and wrong, which would go to defendant's diminished capacity rather than to the issue of mental defect. The court cited two recent cases from other circuits which appear to allow diminished capacity/mental abnormality evidence. *See United States v. Twine*, 853 F.2d 676 (9th Cir.1988); *United States v. Pohlot*, 827 F.2d 889 (3d Cir.1987), ("We conclude that although Congress intended § 17(a) to prohibit the defenses of diminished responsibility and diminished capacity, Congress distinguished those defenses from the use of evidence of mental abnormality to negate specific intent or any other mens rea, which are elements of the offense."), *cert. denied*, 484 U.S. 1011, 108 S.Ct. 710, 98 L.Ed.2d 660 (1988). In both these cases, they distinguished 18 U.S.C. § 17 (the insanity defense) and found that where evidence of diminished capacity is offered to negate the intent element of an offense, the evidence is not being used to establish an affirmative defense (which would be prohibited by § 17) but rather is proffered to negate the *mens rea* element.

Here it is clear from the record that the psychological evidence would go to the issue of defendant's ability to distinguish right and wrong and would be proffered to negate the specific criminal intent necessary to violate 46 U.S.C.App. 1903. We take the circuit court's openness in *Lopez–Pena* to reevaluate the *Kepreos–White* line of reasoning as a basis for finding that, in the context of this case, to the extent

new trial motion. Here, had the first jury been presented with evidence of defendant's subnormal IQ, his resulting need for supervision, and the ease with which persons of normal intelligence could manipulate and mislead him, along with the circumstances surrounding his employment by Rojas in light of his limited mental capacity, we think it unlikely that the government will be able to prove the necessary intent beyond a reasonable doubt.

Because we find that the four requirements for granting a new trial motion based on newly-discovered evidence are present in this case, the time for filing such a motion would be two years and a motion could have been (and can still be) filed by defendant. We, therefore, turn to the issue of the court's power to grant a new trial.

### 2. Was the New Trial Granted Sua Sponte?

We begin here with the obvious. There is no written motion in the record where defendant moves for a new trial pursuant to Rule 33. In fact, we have defense counsel's affidavit stating clearly that she thought she *could not* move for a new trial. To that extent, it is clear that the court did not act pursuant to defendant's motion.

However, we think the procedural history of this case as outlined above reveals that both defendant *and* the government were on notice as to the court's eventual action well before this court entered its October 10, 1991 order. In our July 17, 1991 order requiring defense counsel to file an affidavit, we inquired as to why a new trial motion had not been filed *and* we ordered *both parties* to address the issue of whether a new trial remedy would be appropriate under the circumstances. At the August 15, 1991 hearing, we again urged counsel for both parties to explore all alternatives to a new trial and stated on the record that, unless some alternative was proffered, the court was going to grant defendant a new trial. The court explained that, given the newly-discovered evidence, it would be for a jury after hearing the additional evidence, and not for the judge, to convict him for an offense that carried a statutory minimum term of ten years in prison. Again, in the court's August 19, 1991 order, we opined that, given the procedural posture of this case, the only remedy would be the grant of a new trial pursuant to Fed.R.Crim.P. 33. *Only because of the government's request for a second psychological evaluation*, did we defer ordering a new trial until we could review the report of the second psychological evaluation.

Throughout this entire period, the government did not once bring to the court's attention the issue it now raises in a motion for reconsideration, even though the court ordered the government to do so on at least two different occasions. Nor did defense counsel ever think to file a Rule 33 motion. While the court, in hindsight, could understand how it is that defense counsel, as the proceedings of the last few months unfolded, came to see that a new trial was the likely remedy and saw no need to formally move for it, we are not so sympathetic towards the government. It took this court very little research time to confront the issue that the government raised in its motion. Presumably it would not have taken government counsel, in the context of complying with this court's orders, any more time to discover and raise the issue earlier than *one week before trial*. The result of the parties' failure to seriously and responsibly deal with this issue is that the court, in a very short period of time, has been forced to rule on complex, very subtle legal doctrines. Neither Mr. Sabán's rights nor the citizens' interest in fair judicial proceedings are served by such actions or inactions.[8]

---

that evidence of "diminished capacity" is proffered to negate the *mens rea* element of the offense, it would be admissible. To the extent that it would be used to establish a mental defect as an affirmative defense, it would be admissible under 18 U.S.C. § 17. In either case, the evidence will be admissible on retrial and, therefore, material for Rule 33 purposes.

8. Nobody can seriously and honestly ask this court to sentence this defendant to a ten-year statutory minimum term of imprisonment under these circumstances. The fact that the prosecutor and defense counsel have not met the high expectations we have regarding these mat-

■ Turning to the issue, we start by noting that it is within the sound discretion of the trial court to grant new trial motions. *Wright*, 625 F.2d at 1019; *accord United States v. Seago*, 930 F.2d 482, 488 (6th Cir.1991). "In considering such a motion, the court has broad power to weigh the evidence and assess the credibility of both the witnesses who testified at trial and those whose testimony constitutes 'new' evidence." *Wright*, 625 F.2d at 1019. We, therefore, start from the premise that, in the normal situation—in response to a defendant's timely-filed motion for a new trial—the court would have the *power* to grant a new trial if warranted. Because, as we have already found that it would still be timely to file a new trial motion, we concentrate solely on the *sua sponte* nature of the court's order.

We note here that the cases relied upon by the government for the proposition that a court can never *sua sponte* order a new trial do not arise from similar factual settings nor are they all resolved using the same legal principles. In *Brown*, 587 F.2d at 189–90, the appellate court ruled that the district court erred in granting a new trial on both jurisdictional and "power of the court" grounds, finding that the lower court has no power to consider a new trial motion. As the court stated:

> After the expiration of the seven-day time period following the guilty verdict in this case, the district court had no jurisdiction, under the plain meaning of Rule 33, [footnote omitted] to enter an order purporting to enlarge the time within which Brown could file a motion for new trial. [cite omitted]. Thus, we conclude that the district court had no power to grant a new trial, conditional or otherwise, nor did he have the power to enlarge the time for filing a motion for a new trial.

*Id.* Clearly, the court in *Brown* was concerned with district court orders made outside of the statutorily-mandated period in which a new trial motion could be made. *See also Beran*, 546 F.2d at 1319 n. 1.

In *Newman*, 456 F.2d at 669–72, the court found it improper for a district court to substitute its own ground for a new trial where defendant had not raised the same in a timely-filed new trial motion. Again, the thrust of the opinion had to do with the district court acting *sua sponte* outside of the jurisdictional seven-day period. The court makes reference to the 1966 amendment and the Advisory Committee cited above. The court concluded:

> On the facts presented by this record, where the court grants a new trial more than four-and-a-half months after the seven day period has expired for alleged error in the charge to which the defendant has made no objection, a grant of a new trial on such ground not asserted in a motion made in conformity with the Rules, but articulated *sua sponte* by the trial court is action by the court "on its own motion," and being beyond the jurisdiction of the court, is ineffective.

*Id.* at 672. Again, while this case more strongly supports the government's position, it still turns on the *untimely* aspect of the court's action rather than its *sua sponte* nature. *See also, Vanterpool*, 377 F.2d at 34–36. However, in *Green*, 414 F.2d at 1175, the District of Columbia Circuit ruled that a district court judge could not *sua sponte* order a new trial and that such action is a nullity.

■ The seminal United States Supreme Court case on this issue and the one cited in the Advisory Committee's notes of Rule 33 is *United States v. Smith*, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947). In *Smith*, the Court analyzed the pre–1966 version of Rule 33.[9] Again, much of the

---

ters cannot justify our looking the other way with blind indifference. That is simply not fair.

**9.** The pre–1966 version provided:

NEW TRIAL. The court may grant a new trial to a defendant if required in the interest of justice. If trial was by the court without a jury the court may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly dis-

covered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 5 days after verdict or finding of guilty or within such further time as the court may fix during the 5–day period.

*Smith*, 331 U.S. at 472, 67 S.Ct. at 1332.

Court's analysis had to do with the timeliness of the district court's action and not with its power to act. The Court rejected the notion that a district court could, at any time, change its mind and grant a new trial while the defendant would be limited to the time limits found in the Rule (at the time five days and two years, respectively). *Id.* at 473–474, 67 S.Ct. at 1332–33. As reasons for this construction of the statute, the Court first noted that allowing the trial court to change its mind at any time would create issues as to the finality of judgments for appellate purposes since a district court could deny a motion for a new trial and then, after appeal, grant a new trial for its own reasons, thus rendering the previously-elicited appellate opinion "advisory". *Id.* at 474, 67 S.Ct. at 1333. Second, the Court reasoned that unlimited discretion in this area raised a potential constitutional issue of double jeopardy. In the Court's own words,

> [m]oreover, it would indeed be a strange rule which deprived a judge of power to do what was asked when request was made by the person most concerned, and yet allowed him to act without petition. If a condition of the power is that request for its exercise be not made, serious constitutional issues would be raised. For it is such request which obviates any later objection the defendant might make on the ground of double jeopardy. *Murphy v. Massachusetts*, 177 U.S. 155, 160 [20 S.Ct. 639, 641, 44 L.Ed. 711 (1900)]; *cf. Ex parte Lange*, [85 U.S.] 18 Wall. 163 [21 L.Ed. 872 (1873)].

*Id.* It is clear that the 1966 amendment to Rule 33 responded to this issue of double jeopardy by requiring defendant to move for a new trial, thus waiving his right to later raise the constitutional ground of being tried twice for the same offense. *Ex parte Lange, Id.* The Court finally ruled that it was at the point where defendant could no longer seek relief—after the time limits set in the rule—that also terminated the court's ability to act on its own initiative. *Id.* 331 U.S. at 475, 67 S.Ct. at 1333.

Our own circuit analyzed the *Smith* case in *In re United States*, 565 F.2d 173, 178 (1st Cir.1977). The court here focused on the fact that in *Smith* the district court

granted a new trial after the five-day period in the absence of any allegation of new evidence. Again, it was the fact that the five-day period had expired, thereby stripping defendant of any right to request a new trial, that the First Circuit found to be controlling. In *In re United States*, the court applied the reasoning of *Smith* and found that where a party timely files a motion for a new trial based on newly discovered evidence but the evidence proffered so clearly fails to meet the standards for granting a new trial, this situation "is in substance little different from alleging no evidence at all." *Id.* The court therefore issued a writ of mandamus and the district court was ordered to vacate its new trial motion.

Having reviewed the case law analyzing this issue, we conclude that there is no clear answer. Here, we have no issue of the court acting in an untimely fashion. Nor do we confront the situation where, although a new trial would be granted because of the discovery of new evidence, the court does not have such evidence before it and so is, in reality, acting *sua sponte*. Here, the newly-discovered evidence meets the standard to order a new trial. Literally, all that is lacking is a formal motion made by defendant.

On the other hand, the plain language of Rule 33, the Advisory Committee note, other circuits' case law, all point to the need for strict compliance with the mandates of Rule 33. The reality that *sua sponte* action by this court may create a double jeopardy issue causes us concern. Absent a motion by defendant, we may, in fact, be without power to grant a new trial.

However, there is one more issue that must be resolved and that is the nature of the evidence and the court's responsibility vis-a-vis the discovery of that evidence. Therefore before ruling, we briefly review the court's duty when confronted with evidence that places a person's mental competence in issue.

## B. *18 U.S.C. §§ 4241–4247*

The psychological evaluations and August 15, 1991 hearing come under the rubric of the determination of defen-

dant's mental competency to stand trial. The procedures which courts must follow when the competency of a defendant is placed at issue are contained in 18 U.S.C. §§ 4241–4247. Section 4241(a) provides:

> *Motion to determine competency of defendant*—At any time *after commencement of a prosecution for an offense* and *prior to sentencing* of the defendant, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, *or shall order such a hearing on its own motion,* if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

18 U.S.C. § 4241(a) (emphasis added). Where the "reasonable cause" standard has been met, a district court *is required* to hold a hearing *sua sponte. Hernández–Hernández v. United States,* 904 F.2d 758, 760 (1st Cir.1990); *Figueroa–Vázquez v. United States,* 718 F.2d 511, 512 (1st Cir. 1983) (same standard applied to hearings under 18 U.S.C. § 4244). "Due process requires a hearing if evidence 'raises a reasonable doubt about the defendant's competency.' " *Figueroa–Vázquez,* 718 F.2d at 512 (quoting *de Kaplany v. Enomoto,* 540 F.2d 975, 981 (9th Cir.1976) (*en banc* )). *See Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Even after conviction and prior to sentencing, the need for defendant to be competent survives. *United States v. Pellerito,* 878 F.2d 1535, 1544 (1st Cir.1989).

Here, we are not making a finding that defendant is incompetent to stand trial.[10] Rather, we rule that evidence of defendant's IQ and moderate mental retardation should be placed before the jury in order to determine whether he could form the nec-essary *mens rea* to commit the offense. Having followed the procedures required under 18 U.S.C. § 4241 and having made the above findings, all that is left is a remedy. Failure to give defendant an opportunity to present this testimony may implicate his constitutional rights to due process and to offer testimony in his own defense. *See Rock v. Arkansas,* 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). In order to do this, a new trial has to be ordered. Therefore, even if we were to lack authority under Rule 33 because no motion was made, we think that the nature of the new evidence coupled with the lack of any alternative would require the same remedy.

However, in order to avoid ruling on constitutional grounds where there are other bases for reaching the same position, we make the following determination. We can find no reason why this court cannot request of defendant to move for a new trial, *see* Wright, § 551 at 241, if that is the remedy he seeks, at which time he would be free to present evidence of his IQ, his moderate retardation and their effects on his capacity to form the requisite criminal intent. His motion remains timely and, by so moving, removes any potential double jeopardy problems.

We therefore ORDER defendant to file with this court a motion requesting a new trial by Wednesday, October 23, 1991, at 12 Noon. Defendant is under no obligation to file this motion. However, failure to do so will result in the court vacating its new trial motion and proceeding with sentencing of defendant.

### III.

#### Conclusion

So that the parties are clear about the court's rulings, we repeat them here.

1. We find that there is a basis for granting a new trial on the discovery of new evidence—the extent of defendant's limited mental capacity—and that granting

---

10. This does not mean that defendant cannot raise an insanity defense at trial. It simply means that, given the record as it stands, at this juncture we do not find that defendant is incompetent to stand trial.

a new trial on this basis is timely under Fed.R.Crim.P. 33.

2. We ORDER defendant, if he seeks the remedy of a new trial based on newly discovered evidence, to file with this court a motion requesting a new trial on this ground by Wednesday, October 23, 1991, at 12:00 Noon.

3. Defendant is under no obligation to file this motion.

4. Failure to file a new trial motion will result in the court vacating its new trial order and proceeding with sentencing of defendant.

5. We have ORDERED the transcript of the August 15, 1991 hearing to be filed as part of the record of this case.

IT IS SO ORDERED.