**UNITED STATES, Appellee,**

v.

**Lisa BURNS, Defendant, Appellant.**

No. 93–1251.

United States Court of Appeals,
First Circuit.

Submitted Sept. 10, 1993.

Decided Feb. 8, 1994.

---

William Maselli, Auburn, ME, by Appointment of the Court, on brief, for appellant.

Jay P. McCloskey, U.S. Atty., and Michael M. DuBose, Asst. U.S. Atty., Portland, ME, on brief, for appellee.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and BARBADORO,* District Judge.

BARBADORO, District Judge.

Lisa M. Burns, a United States Post Office employee, was tried and convicted on two counts of embezzling mail in violation of 18 U.S.C. § 1709. She argues that we should reverse her conviction because: (1) the prosecutor violated Fed.R.Crim.P. 16(a)(1)(A) by

---

* Of the District of New Hampshire, sitting by designation.

failing to timely disclose a postal inspector's report summarizing statements Burns made to one of her supervisors; (2) the District Judge erroneously admitted other allegedly involuntary statements Burns made to the investigating postal inspector; (3) the Judge mistakenly read from a superseded indictment during his preliminary jury instructions; (4) the Judge improperly excluded on hearsay grounds certain testimony Burns offered to impeach the testimony of another witness; and (5) the Judge's jury instruction concerning Burns' intoxication defense unconstitutionally required her to prove that she acted without criminal intent. Finding no reversible error in these claims, we affirm her conviction.

## I. Background

Lisa Burns first came to the attention of United States Postal Inspectors after Inspector Robert Bethel placed a routine "test mailing" at the Naples, Maine post office where Burns worked. "Test mailing" is the Postal Service's method of determining whether employees at certain randomly-selected post offices are properly handling the mail. The "test mail" is an envelope addressed to a fictitious person at a non-existent post office box at the targeted post office. The envelope is typically marked "refund inside" and contains a rebate check made out to bearer. The return address on the envelope specifies a post office box in the New England area controlled by the Postal Service. If the mailing is handled properly, it is usually marked "undeliverable" and returned within two weeks. If it is not returned, the postal inspector targets the post office for additional test mailings and attempts to determine what happened to the initial mailing.

The first test mailing Bethel placed at the Naples post office contained a $5 rebate check. When the mailing was not returned, Bethel recovered the cashed rebate check and determined that it had been endorsed by Burns. Bethel then tried to tempt Burns with a second mailing containing a $10 rebate check. It also disappeared. This time, Bethel discovered that the rebate check apparently had been endorsed by Karen King, Burns' roommate.

After failing to entice Burns with yet another test mailing, Bethel confronted her in the parking lot of the post office. He identified himself, described the nature of his investigation, advised Burns that she was not under arrest, and asked her whether she would be willing to speak with him. She agreed, and they returned to the post office. Before beginning his questioning, Bethel read Burns her *Miranda* rights from a Postal Service waiver form. He also had her initial each printed statement after it was read and sign the form at the end. Burns then made several incriminating statements in response to Bethel's questions. At the end of the interview, she wrote out and signed a statement memorializing her admissions. Burns later sent Bethel a supplemental statement in which she alleged that she had an imperfect recollection of the incidents in question because she was an alcoholic and was intoxicated when she took the test mailings. At trial, the government's case rested primarily on Bethel's testimony and Burns' admissions. In response, Burns pleaded entrapment and intoxication. The jury ultimately rejected her defenses and found Burns guilty on both counts. She was later sentenced to 60 days confinement and fined $500.

## II. Discussion

### A. Pre–Trial Disclosure Pursuant to Rule 16

▮ Burns' primary argument on appeal is that the prosecutor violated Rule 16(a)(1)(A) by failing to disclose prior to trial a report summarizing statements Burns made to one of her supervisors. In pertinent part, the rule provides that:

Upon request of a defendant the government shall disclose to the defendant and make available for inspection, copying, or photographing: ... that portion of any written record containing the substance of any relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent....

Burns argues that her supervisor was a "government agent" and that she made her state-

ments "in response to interrogation." Thus, she contends that the prosecutor was obligated to disclose the report pursuant to her pretrial request. We reject Burns' arguments because we determine that Burns' supervisor was not a "government agent" as that term is used in Rule 16.[1]

Rule 16 does not define "government agent." We therefore must choose between the two plausible definitions of the term. Viewed broadly, the term encompasses anyone who performs duties of a public nature on behalf of the executive, legislative or judicial branches of the local, state or federal government. *Black's Law Dictionary* 695–96 (6th ed. 1990) (defining "government" and "government agent"). Burns' supervisor would qualify as a government agent under this definition because he was employed by the United States Postal Service when the statements were made. The competing definition is narrower and more colloquial. It includes only persons with criminal law enforcement responsibilities or their agents. *See, e.g., Hoffa v. United States,* 385 U.S. 293, 295, 305–07, 87 S.Ct. 408, 410, 415–16, 17 L.Ed.2d 374 (1966) (using "government agent" to describe an undercover law enforcement officer); *Illinois v. Perkins,* 496 U.S. 292, 294, 297, 299, 110 S.Ct. 2394, 2395, 2397, 2398, 110 L.Ed.2d 243 (1990). Under this definition, Burns' supervisor would not qualify as a government agent since he had no criminal law enforcement responsibilities and was not acting as an agent of the postal inspectors when Burns made the incriminating statements. The choice between these two definitions presents a question of law which we review *de novo. United States v. O'Neil,* 11 F.3d 292, 294 (1st Cir.1993).

We begin our analysis with the axiom that language must be interpreted in context. *Kelly v. Robinson,* 479 U.S. 36, 43, 107 S.Ct. 353, 357, 93 L.Ed.2d 216 (1986). As we have recently acknowledged, "[t]erms in an act whose meaning may appear plain outside the scheme of the statute can take on a different meaning when read in their proper context." *Greenwood Trust Co. v. Massachusetts,* 971 F.2d 818, 825 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 974, 122 L.Ed.2d 129 (1993).

Here, by limiting the prosecution's disclosure obligation to summaries of relevant statements that are made by a defendant "in response to interrogation," the Rule's surrounding text strongly supports the narrow reading of the term. When Rule 16 was amended in 1974 to include the language at issue, the amendment's drafters were working in a milieu in which courts were required to give special attention to statements obtained in response to interrogation by law enforcement officers. *See, e.g., Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Obviously, *Miranda* and its progeny require suppression of a defendant's statements obtained through custodial interrogation unless the defendant properly waived his or her *Miranda* rights. *Id.* at 444–45, 86 S.Ct. at 1612–13. Moreover, even if a defendant was not in custody, his or her statements might still be suppressed if they were coerced through interrogation by law enforcement officers. *See, e.g., Rogers v. Richmond,* 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961); *Davis v. North Carolina,* 384 U.S. 737, 740–42, 86 S.Ct. 1761, 1763–65, 16 L.Ed.2d 895 (1966); *Beecher v. Alabama,* 389 U.S. 35, 36 & n. 2, 88 S.Ct. 189, 191 & n. 2, 19 L.Ed.2d 35

1. We also reject Burns' additional assertion that, because Bethel reduced the supervisor's oral summary of defendant's statements to writing, this written summary constitutes a recorded statement of the defendant subject to disclosure "regardless of who the statement was made to or how it was occasioned." Although the first subpart of Rule 16(a)(1)(A) makes a defendant's "written or recorded statements" discoverable irrespective of whether they were made in response to interrogation by a known government agent, we agree with the Second Circuit Court of Appeals that an oral statement does not become "written or recorded" merely because a govern-

ment agent made a written summary of the statement before trial. *In Re United States,* 834 F.2d 283, 284–85 (2d Cir.1987). *See also, e.g., United States v. McCure,* 734 F.2d 484, 492–93 (10th Cir.1984). This is especially true where, as here, the statement was actually heard by a third party and then reported to the government agent at a later date. *See In Re United States,* 834 F.2d at 285–86.

Finally, because we agree with the trial judge that Burns' supervisor was not a government agent, we need not decide whether Burns' statements were made "in response to interrogation."

(1967). *See also Beckwith v. United States,* 425 U.S. 341, 347–48, 96 S.Ct. 1612, 1616–17, 48 L.Ed.2d 1 (1976) (citing *Rogers* and *Davis* for the proposition that statements resulting from noncustodial interrogation may be suppressed if involuntary). Such concerns did not then and do not now apply to statements obtained from a defendant by persons without law enforcement responsibilities, regardless of whether the statements were obtained through interrogation. *See, e.g., Yates v. United States,* 384 F.2d 586, 587–88 (5th Cir.1967) (hotel manager who tipped FBI); *United States v. Antonelli,* 434 F.2d 335, 336–38 (2d Cir.1970) (private security guard); *United States v. Eide,* 875 F.2d 1429, 1431, 1433–34 (9th Cir.1989) (defendant's supervisor at federal Veterans' Administration Medical Center); *United States v. Pullen,* 721 F.2d 788, 790–91 (11th Cir.1983) (bank officials). Thus, if "government agent" refers only to law enforcement officials or persons acting on their behalf, the potential for pretrial suppression of statements that resulted from interrogation by such individuals provides a rational basis for limiting the government's pretrial disclosure obligation to summaries of statements made "in response to interrogation." The rational basis for the interrogation limitation disappears, however, if "government agent" is construed to mean government employee.

Besides enjoying strong contextual support, the narrow meaning of "government agent" avoids the arbitrariness that would result if the term were defined more expansively. We agree that the broad reading of "government agent" gives maximum deference to the policies underlying Rule 16's mandatory disclosure rules. *See United States v. Alvarez,* 987 F.2d 77, 84–85 (1st Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 147, 126 L.Ed.2d 109 (1993) (Rule 16's mandatory disclosure provisions promote "the fair and efficient administration of criminal justice by providing the defendant with sufficient information upon which to base an intelligent [ ] plea; by minimizing the undesirable effect of suppression at trial; and by

contributing to the accuracy of the fact finding process."). Once it is divorced from the law enforcement context, however, this definition is problematic because it deteriorates into a completely arbitrary limitation on the prosecution's duty to disclose. Under the term's broad reading, for example, the prosecution would be obligated to disclose portions of a report summarizing statements the defendant made to a government cook, but not those portions of the same report that summarize statements the defendant made to another cook at a privately-run diner. Moreover, given that Rule 16 requires that the individual to whom the statements are made be "then known to the defendant" as a government agent, the prosecution would only be obligated to disclose the defendant's statements to the government cook if the defendant knew when she made the statements that the cook was a government employee. The arbitrariness of such distinctions is obvious.

■ Consistent with the rule of construction that legislative enactments "should be interpreted to avoid untenable distinctions and unreasonable results whenever possible," *American Tobacco Co. v. Patterson,* 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982); *Kelly v. United States,* 924 F.2d 355, 361 (1st Cir.1991), we refuse to construe "government agent" in a way that requires such arbitrary line drawing when a less problematic reading of the term is also plausible. Here, the narrower definition of "government agent" limits the government's pretrial disclosure obligation to summaries of those statements that are most likely to require a pretrial ruling before they are admitted into evidence. By doing so, this definition serves the policies underlying Rule 16 without irrationally requiring the prosecution to base its disclosure determination on whether the defendant knows that the person to whom she is making her statements is a government employee. We therefore agree with the trial court that, as used in Rule 16, "government agent" refers only to law enforcement agents or persons acting on their behalf.[2]

---

2. In reaching this conclusion, we do not endorse the prosecution's decision to withhold Bethel's report. As the advisory committee notes to the

Rule point out, "[t]he rule is intended to prescribe the minimum amount of discovery to which the parties are entitled." Fed.R.Crim.P.

### B. *Voluntariness of Burns' Confession*

Burns next challenges the District Judge's denial of her motion to suppress the oral and written statements she made in response to questioning by Inspector Bethel. She alleges that Bethel promised not to arrest her if she cooperated with his investigation. She also claims that Bethel's questioning was inherently coercive because it occurred at the one-room post office in the presence of customers and her supervisor. Finally, she contends that she was in a "weakened psychological state" during the interview because she was an alcoholic who had stopped drinking only two weeks earlier. Based upon the totality of these factors, Burns claims that her statements were involuntary and therefore should have been suppressed.

■ In determining the voluntariness of a confession, courts must apply the "totality of the circumstances test." *Arizona v. Fulminante*, 499 U.S. 279, 286, 111 S.Ct. 1246, 1251, 113 L.Ed.2d 302 (1991). Although the ultimate issue of voluntariness is a question of law subject to plenary review, we will accept the district court's subsidiary findings of fact unless they are "clearly erroneous." *United States v. Garcia*, 983 F.2d 1160, 1167 (1st Cir.1993). Further, we will uphold the district court's denial of a motion to suppress if it is supported by any reasonable view of the evidence. *Id.*

Applying these standards to the three factors allegedly requiring suppression of Burns' statements—Bethel's alleged promise, his choice of interrogation site, and Burns' mental state—we conclude that the District Judge correctly denied her motion to suppress. First, while Burns testified that Bethel promised not to arrest her if she agreed to be interviewed, the Magistrate Judge who presided at the suppression hearing accepted Bethel's contrary testimony and found that he had never made such a promise. Since the record contains sufficient evidence to support the Magistrate Judge's finding, the District Judge's acceptance of this finding was not clearly erroneous. *See United States v. Cruz Jimenez*, 894 F.2d 1, 7 (1st Cir.1990) ("Where there are two competing

16 advisory committee's note (1974 amendment)

interpretations of the evidence, the district court's choice of one of them cannot be clearly erroneous."). Accordingly, Bethel's alleged promise not to prosecute Burns plays no role in our evaluation of whether her statements were voluntary.

■ Second, we reject Burns' claim that Bethel chose an inherently coercive setting for the interview. The record amply supports the Magistrate Judge's conclusion that Burns agreed to be interviewed at the post office after being informed that she was not under arrest and after voluntarily waiving her *Miranda* rights. Moreover, Burns worked at the post office, and so was intimately familiar with the site Bethel chose for the interview. Given that Burns agreed to be interviewed in familiar surroundings after being advised that she was under no obligation to speak, we cannot accept her claim that Bethel's decision to conduct the interview at the post office was inherently coercive.

■ Finally, Burns contends that her statements were involuntary because they were a product of her weakened mental state. Burns correctly conceded at the suppression hearing that, absent some evidence of coercive police conduct, the court could not find that her weakened mental state rendered her statements involuntary. *See Colorado v. Connelly*, 479 U.S. 157, 163–67, 107 S.Ct. 515, 519, 93 L.Ed.2d 473 (1986); *United States v. Victoria–Peguero*, 920 F.2d 77, 88 (1st Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2053, 114 L.Ed.2d 458 (1991). Since we have already rejected Burns' contention that Bethel's conduct was coercive, we must reject her state of mind argument as well.

### C. *Reading from the Wrong Indictment*

■ Burns claims that the District Judge committed reversible error by mistakenly reading from a superseded indictment when he described the charged offenses in his preliminary jury instructions. Because Burns did not object to the Judge's preliminary instructions, we are limited to "plain error" review. *See* Fed.R.Crim.P. 52(b). Accord-

(West 1993).

ingly, we will not reverse her conviction unless: (1) the Judge erred; (2) his error was "clear" or "obvious"; and (3) the error affected Burns' "substantial rights," which in this case means that the claimed error probably affected the jury's verdict. *See United States v. Olano*, —— U.S. ——, —— – ——, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993). Here, because Burns has failed to show that the court's error affected her substantial rights, her claim fails.

Although the District Judge mistakenly read from the original indictment during his preliminary instructions, this error could not have affected the jury's verdicts. First, each of the original indictment's two counts tracked the language of the embezzlement statute and described each embezzlement's approximate date and place. Second, the only difference between the two indictments is that the original indictment identified the embezzled test mailings solely by listing their fictitious addresses, whereas the superseding indictment also identified the payors and check numbers of the rebate checks that the mailings contained. Since the original indictment provided Burns with enough information about the charged offenses to both prepare for trial and avoid double jeopardy, the additional information contained in the superseding indictment is mere surplusage. *See United States v. Serino*, 835 F.2d 924, 929 (1st Cir.1987). Moreover, the Judge's failure to read this surplusage to the jury could not have affected its verdicts because the contents of the embezzled test mailings were not in dispute. *See United States v. Yefsky*, 994 F.2d 885, 892–94 (1st Cir.1993) (trying the defendant on an indictment containing insufficient detail concerning the charged offense was harmless error where defendant received advance notice of the government's trial theory and defendant had an adequate opportunity to respond at trial).[3]

### D. *Hearsay*

Burns next contends that the District Judge improperly excluded as hearsay certain testimony she offered to impeach the testimony of another witness. Early in her case, Burns called her co-worker and friend, Cathy Larsen, as a character witness. On cross-examination, Larsen stated that she had visited Burns after Bethel had confronted her about the missing mailings. Larsen then testified that, while discussing the theft of the test mail, Burns told her that she "had done something stupid," was "embarrassed and ashamed" and apologized for her conduct. After calling several other witnesses, Burns called her roommate, Karen King. King, who had been present with Burns during Larsen's visit, testified:

Q. On that night did Lisa make any statement saying she had taken checks?

A. Never.

The prosecutor objected to King's answer, claiming that the answer was hearsay. Defense counsel responded that he was offering the testimony not to establish that Burns had never taken the checks, but to impeach Larsen's testimony that Burns had made the statements. The Judge sustained the prosecutor's objection. On appeal, Burns contends that exclusion of this testimony was reversible error.

 We agree that King should have been allowed to testify that Burns never admitted to taking the checks. When the prosecutor elicited testimony from Larsen about Burns' statements, the prosecutor put those statements in dispute. Burns then was entitled to produce testimony from another of the meeting's participants to refute the prosecutor's version of what was said. Such testimony is not hearsay because it was not offered to prove the truth of Burns' out-of-court statements. Since King was prepared to testify concerning her own observations of what was said during the meeting, her testimony should have been admitted.

---

**3.** Burns also argues that she was tried on the wrong indictment. However, this argument does not merit extended discussion because it is not supported by the record. At the close of the case, the judge instructed counsel to review both the indictment and the jury verdict form before they were submitted to the jury. The record is devoid of any suggestion that counsel failed to ensure that it was the superseding indictment that was submitted. We thus have no reason to determine whether Burns' conviction would have to be reversed if the jury had been asked to render its verdicts on the original indictment.

■ Although the trial judge erred, we decline to reverse Burns' conviction on this basis because his error was harmless. *See* Fed.R.Crim.P. 52(a). Burns did not challenge the prosecutor's well-supported claim that she took the test mailings. Under these circumstances, her statements to Larsen were harmful only to the extent that they might undermine her claim that she was so intoxicated when she took the checks that she did not remember doing so. Even for this purpose, however, the statements are of limited probative value. Burns allegedly made the statements after she was confronted by Bethel and accused of taking the mailings. Having been so accused, and thus supposedly learning what she had done, it was entirely consistent with her intoxication defense for her to have expressed shame to her friends. Given the limited value of Larsen's testimony, the fact that Burns was denied the opportunity to challenge it could not have affected the jury's verdict.

The harmlessness of the Judge's error is underscored by another fact—that the prosecution did not need to rely on Larsen's testimony to establish that Burns acted with criminal intent. In her statements to Bethel, Burns acknowledged taking the test mailings and described how she did so in detail. It was this testimony, far more than Larsen's, that demolished Burns' claim that she was too intoxicated to remember taking the test mailings. Accordingly, it was harmless error for the Judge to exclude King's testimony about her recollection of Burns' statements to Larsen. *See, e.g., United States v. Burke,* 948 F.2d 23, 27–28 (1st Cir.1991).

E. *The Intoxication Instruction*

■ Burns' final claim is that the District Judge's intoxication instruction unconstitutionally required her to prove that she acted without criminal intent. The Judge gave the following instruction on Burns' intoxication defense:

Now, the defendant *claims that she was so far overcome by the use of alcohol that it was impossible on the occasions for her to form the required specific intent,* as I have just defined that intent to you.

I instruct you that you may consider evidence of alcohol use by the defendant, along with all of the other evidence, in deciding whether the government has proven beyond a reasonable doubt that the defendant had the requisite intent to, as I have described that to you. (Emphasis added).

Burns contends that the phrase "defendant claims ... it was impossible" suggested that Burns was required to prove that she acted without criminal intent. We disagree.

The intoxication instruction merely described the degree to which Burns' cognitive capacity must have been impaired before her alcohol use could support a finding of not guilty. Immediately after instructing the jury on the issue, the Judge reminded the jury that the prosecution still had to prove that Burns acted with criminal intent. When the two instructions are read together, they adequately apprised the jury that the prosecution had the burden of establishing beyond a reasonable doubt that Burns' alcohol use did not prevent her from intentionally committing the charged offenses. Accordingly, we reject Burns' challenge to the Judge's intoxication instruction.[4]

For the foregoing reasons, Burns' conviction is *Affirmed.*

---

4. The prosecution contends that Burns had no right to an intoxication instruction because intoxication is a diminished capacity defense barred by the Insanity Defense Reform Act of 1984, 18 U.S.C. § 17. *See United States v. Saban–Guttier-rez,* 783 F.Supp. 1538, 1545, n. 7 (D.P.R.1991), *aff'd,* 961 F.2d 1565 (1st Cir.1992) (unpublished opinion); *United States v. White,* 766 F.2d 22, 24 (1st Cir.1985). Given our holding in the present case, we express no opinion on this issue.